**JUDGE RAMOS**

HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, NY 10016
Tel:  212 592-1400
Fax: 212-592-1500
Barry Werbin, Esq.
Anna M. Hershenberg, Esq.

**13 CIV 3929**

Attorneys for Defendant
Volkswagen Group of America, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

CMS VOLKSWAGEN HOLDINGS, LLC and   :
HUDSON VALLEY VOLKSWAGEN, LLC,   :
  :
      Plaintiffs,   :    Civil Action No._____
vs.   :
  :
VOLKSWAGEN GROUP OF AMERICA,   :    <u>NOTICE OF REMOVAL</u>
INC., & LASH AUTO GROUP, LLC,   :
  :
      Defendants.   :

------------------------------------------------------ x

PLEASE TAKE NOTICE that Defendant Volkswagen Group of America, Inc.

("VWGoA"), by and through its undersigned counsel, hereby removes the above-captioned civil

action, and all claims and causes of action therein, from the Supreme Court of the State of New

York, County of Rockland, to the United States District Court for the Southern District of New

York, pursuant to 28 U.S.C. §§ 1441(b) and 1446.  In further support of such removal, VWGoA

states as follows:

<u>**PROCEDURAL BACKGROUND**</u>

1. On or about May 10, 2013, Plaintiffs CMS Volkswagen Holdings, LLC d/b/a

Palisades Volkswagen ("Palisades Volkswagen") and Hudson Valley Volkswagen, LLC

(collectively with Palisades Volkswagen, the "Plaintiffs") filed a summons and complaint in the

above-captioned action in the Supreme Court of the State of New York, County of Rockland, Index No. 032539/13 (the "State Court Action").

2.      The summons and complaint were served on VWGoA on May 14, 2013. Copies of the summons and complaint are attached as **Exhibits A** and **B**, respectively.

3.      On June 4, 2013, the parties filed a Stipulation Extending Time to Answer or Otherwise Move in the State Court Action, extending the date for VWGoA to answer or otherwise move to June 24, 2013, a copy of which is attached as **Exhibit C**.

**BASIS OF REMOVAL**

4.      This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the action, as explained below, is between citizens of different states.

**CITIZENSHIP OF PLAINTIFFS AND VWGOA**

5.      Plaintiffs are citizens of New York and Connecticut based on the following facts:

a.      Plaintiffs are New York limited liability companies. The sole member of Plaintiffs is The Premier Collection LLC, a New York limited liability company.

b.      The members of The Premier Collection LLC are: Thomas Coughlin, Sean Coughlin, Richard Stavridis, John Matteson, Patricia Coughlin, CIC, LLC and CICGR, LLC.

c.      Thomas Coughlin, Sean Coughlin, and Patricia Coughlin are citizens of Connecticut. Richard Stavridis and John Matteson are citizens of New York.

d.      CIC, LLC is a New York limited liability company. The members of CIC, LLC are Sean Coughlin, Patricia Coughlin, Brian Coughlin, and Susan Bradbury, all of who are citizens of Connecticut.

e.      CICGR, LLC is a Connecticut limited liability company. The members of CICGR, LLC are:

| i.   | Sean Coughlin as custodian for Michaela Coughlin, Lauren Coughlin, and Jack Coughlin; each of these individuals is a citizen of Connecticut; |
|------|---|
| ii.  | John Bradbury as custodian for John R. Bradbury III and Lily Bradbury; each of these individuals is a citizen of Connecticut; and |
| iii. | Brian Coughlin as custodian for Thomas D. Coughlin and Fiona Coughlin; each of these individuals is a citizen of Connecticut. |

The information alleged in this Paragraph was attested to by Thomas J. Coughlin in the Affidavit previously submitted by the Plaintiffs to VWGoA and attached as **Exhibit D**.

6.     Defendant VWGoA is a citizen of New Jersey and Virginia, as it is a corporation organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

### CITIZENSHIP OF LASH AUTO GROUP

7.     Defendant Lash Auto Group LLC ("Lash") is a New York limited liability company.  Plaintiffs have named Lash as a defendant in connection with Palisades' claims arising out of the Variable Bonus Program (the "VBP") administered by VWGoA's Volkswagen of America, Inc. operating unit ("VWoA").  As alleged by the Plaintiffs, "One element of the VBP is the New Vehicle Sales Bonus under which dealers may receive rebates of up to 2% of the base manufacturer's suggested retail price ('MSRP') of each new vehicle sold." (Ex. B at ¶28).

8.     The Plaintiffs allege that the methodology that VWoA uses to determine the new vehicle sales objectives that Palisades must meet to qualify for the bonus "make[] it virtually impossible for Palisades to achieve its sales targets and to earn VBP rebates on each new vehicle sold." (Ex. B at ¶28).  Palisades further alleges that "The VBP thereby violates section 463(2)(g) of the Dealer Act because it is a sales incentive program that results in some dealers paying lower prices than new vehicles than other dealers, without satisfying the statutory safe harbor for programs that are available to all dealers on a proportionately equal basis." (*Id.* at ¶30).

3

Although Plaintiffs acknowledge that Lash is not the only "other dealer" that allegedly pays a lower price for new vehicles, Lash is the only other Volkswagen dealer named in this lawsuit.

9.     On information and belief, the members of Lash are citizens of New York and Connecticut and, therefore, Lash is a citizen of New York and Connecticut. The Plaintiffs allege that "Palisades and Hudson Valley seek no affirmative relief against Lash, other than it be bound by any determination in this action as to the legality of Volkswagen Group's incentive program. Lash is a necessary party within the meaning of CPLR §1001 because it may be inequitably affected by any judgment entered in this action in that, among other things, it would no longer receive the benefit of discriminatory pricing if the injunctive relief sought by Palisades is granted." (Ex. B at ¶12).

10.     The Court may not consider Lash's citizenship for purposes of determining whether it has diversity jurisdiction because Lash is not a real party in interest to this action. *See Audi of Smithtown, Inc. v. Volkswagen of America, Inc.*, 2009 U.S. Dist. LEXIS 10213, at *13-14 (E.D.N.Y. Feb. 11, 2009), *citing, Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980).

11.     The plaintiffs in *Audi of Smithtown* were two Audi dealers that were citizens of New York. The defendants were Audi of America, Inc. ("Audi"), which is a division of VWGoA and was at the time a citizen of Michigan and New Jersey, and Atlantic Audi, a citizen of New York. The question was whether the court should consider Atlantic Audi's citizenship for purposes of determining diversity jurisdiction.

12.     *Audi of Smithtown* arose out of two incentive programs administered by Audi. In that case, the plaintiff dealers alleged that Audi had violated the New York Dealer Act by not "requir[ing] Atlantic Imports to meet the same requirements for receiving [incentive] payments

that Audi requires of its other existing New York dealers." 2009 U.S. Dist. LEXIS 10213, at *3. The plaintiff dealers in *Audi of Smithtown* sought injunctive relief "precluding Audi from providing certain benefits to Atlantic Imports." *Id.* at *16.

13.     The *Audi of Smithtown* court analyzed whether Atlantic Audi was a real party in interest, *i.e.* was Atlantic Audi: i) a necessary party under state law; and ii) did it have interests that would be directly and substantially affected by the adjudication of the lawsuit. *See Smithtown*, 2009 U.S. Dist. LEXIS 10213, at *13-14. *See also Birnbaum v. SL&B Optical Centers*, 905 F. Supp. 267, 271 (D. Md. 1995). The court held that Atlantic Audi was a real party in interest, finding that the plaintiff dealers request that Audi be "preclude[ed] Audi from providing certain benefits to Atlantic Imports" to be dispositive on both prongs of the real party in interest inquiry. *Smithtown*, 2009 U.S. Dist. LEXIS 10213, at *16.

14.     The Plaintiffs in this case do not ask the Court to preclude VWGoA from paying incentives to Lash but, rather, ask the Court to order VWGoA to pay incentives to Palisades. (*See* Ex. B at 16, roman number (ii) in the *ad damnum* clause). Unlike *Audi of Smithtown,* the outcome of this case will not affect the incentive money paid to Lash, the so-called "necessary" party, rendering any possible interest that Lash has in this action indirect and insubstantial. *See, e.g., Bergstrom Imports Milwaukee, Inc. v. Chrysler Group LLC*, 2012 U.S. Dist. LEXIS 96508, at *10 (E.D. Wis. Jul. 12, 2012) (holding that a non-diverse defendant with no relationship to the plaintiff and against whom no claims are asserted and no relief sought does not have an interest justifying its inclusion as a party merely because the outcome could affect its business).

15.     Lash is also not a necessary party under state law. Under CPLR §1001(a), a party is necessary if it "might be inequitably affected by a judgment in the action." A party, while it may be affected by a judgment, is not "inequitably affected" when "the interests of the nonjoined

party and a party who has been joined stand or fall together." *See Country Village Towers, Corp. v. Preston Comm., Inc.* 289 A.D.2d 363, 364 (2d Dep't 2001), *quoting, Matter of Doner v Comptroller of State of N. Y.*, 262 A.D.2d 750, 751 (3d Dep't 1999). Lash's interests, such as they are, "stand or fall" with VWGoA's interests because VWGoA's interest is to preserve its current business decisions about how to administer the VBP and, according to the Plaintiffs, that is what Lash wants as well because under the *status quo*, Lash benefits vis-à-vis Palisades. (Ex. B at ¶12). Lash therefore cannot be "inequitably" affected by a judgment in this case because such an indirect economic impact is not enough, standing alone, to make Lash a necessary party under CPLR §1001(a). *See also In re Mid Island Therapy Assoc., LLC*, 99 A.D.3d 1082, 1084 (3d Dep't 2012) ("While Supreme Court's determination in this proceeding may have some fiscal effect on the Counties and NYCDOE, we are of the view that, under the circumstances here, their interests will not be 'inequitably' affected within the meaning of CPLR 1001").

16.     The Court also may not consider Lash's citizenship because "there is no possibility, based on the pleadings, that [Plaintiffs] can state a cause of action against [Lash]." *See Pampilloria v. RJR Nabisco. Inc.*, 138 F.3d 459, 461 (2nd Cir. 1998). Here, Plaintiffs do not assert any claims against Lash and allege that they do not seek any relief against Lash, other than that Lash be bound by the Court's ruling. But this amounts to no request for relief at all because it is VWGoA, not Lash, that administers the VBP and who would need to be bound by any decision. *See Bergstrom Imports*, 2012 U.S. Dist. LEXIS 96508, at *5-7 (holding that non-diverse defendant against whom no claims were asserted and no relief was sought was improperly joined and must be disregarded for purposes of determining diversity jurisdiction). Lash would no more need to be bound by a decision than all of the other Volkswagen dealers in New York, none of who were named as defendants.

6

17.     Pursuant to 28 U.S.C. §1446(b)(2), Lash is not required to join in this Notice of Removal because it is not a properly joined party.  Nevertheless, Lash consents to removal of this action.  *See* Lash Auto Group LLC's Consent to Removal, attached as **Exhibit E**.

### AMOUNT IN CONTROVERSY

18.     Palisades asserts two counts that arise out of the VBP.  In connection with those counts, Palisades alleges in Paragraph 28 of the complaint that "One element of the VBP is the New Vehicle Sales Bonus under which dealers may receive rebates of up to 2% of the base manufacturer's suggested retail price ('MSRP') of each new vehicle sold."  (Ex. B at ¶28).  Palisades further alleges that the methodology that VWoA uses to determine Palisades' new vehicle sales objectives, which objectives Palisades must meet to qualify for the VBP, "make[] it virtually impossible for Palisades to achieve its sales targets and to earn VBP rebates on each new vehicle sold."  (Ex. B at ¶29).

19.     In 2012, the total new vehicle base MSRP for all new vehicles retailed by Palisades was $ 13,732,085.  (*See* **Exhibit F**, Affidavit of Michael C. Wheeler, at ¶4).  Two percent of that total base MSRP is $274,641.  In the first quarter of 2013, the total new vehicle base MSRP for all new vehicles retailed by Palisades was $ 2,892,940.00.  (*See* Ex. E at ¶4).  Two percent of that total base MSRP is $57,858.  Palisades' claims arising out of the VBP accordingly involve an amount in controversy in excess of $75,000, exclusive of interest and costs.

20.     In Count IV of their complaint, the Plaintiffs allege that VWGoA is unlawfully withholding consent to the proposed transfer of 27.5% of the ownership interest in the Plaintiffs.  (*See* Ex. B at ¶¶66-71).  Plaintiffs ask the Court to order VWGoA to approve those proposed transfers.

21.   Based on financial information submitted by the Plaintiffs to VWGoA, the transfer of 27.5% of the interest in Plaintiffs will result in a seven-figure transfer of the current assets of the Plaintiffs and will result in a transfer of owners' equity of well-over $75,000.  Thus, this action, on this additional basis, involves an amount in controversy in excess of $75,000, exclusive of interest and costs.

Dated:    June 7, 2013                          Respectfully submitted,

                                                Attorney for Volkswagen Group of America,
                                                Inc.

                                                Barry Werbin
                                                Anna M. Hershenberg
                                                Herrick, Feinstein LLP
                                                2 Park Avenue
                                                New York, NY 10016
                                                Telephone: (212) 592-1400

Of Counsel:

Randall L. Oyler
Steven J. Yatvin
BARACK FERRAZZANO
  KIRSCHBAUM & NAGELBERG LLP
200 West Madison Street
Suite 3900
Chicago, Illinois 60606
Telephone:  (312) 984-3100



FILED: ROCKLAND COUNTY CLERK 05/10/2013

NYSCEF DOC. NO. 1

INDEX NO. 032539/2013

RECEIVED NYSCEF: 05/10/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

CMS VOLKSWAGEN HOLDINGS, LLC and
HUDSON VALLEY VOLKSWAGEN, LLC,

Plaintiffs,

-against-

VOLKSWAGEN GROUP OF AMERICA, INC. and
LASH AUTO GROUP, LLC,

Defendants.

Index No.: 032539/13

Dated Filed: May 10, 2013

**SUMMONS**

Plaintiffs designate Rockland
County as the place of trial

The basis of venue is plaintiff's
principal office.

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and
to serve a copy of your answer on the Plaintiff's attorneys within 20 days after the service of this
summons, exclusive of the date of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to answer, judgment will be taken against you by default for the relief demanded in the
Complaint.

Dated: New York, New York
   May 10, 2013

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.

By: _____
      Russell P. McRory
   875 Third Avenue, 9th Fl.
   New York, New York 10022
   Tel: (212) 603-6300
   *Attorneys for Plaintiffs*

To:   Volkswagen Group of America Inc.
      c/o Corporation Service Company
      80 State Street
      Albany, New York 12207-2543

      Lash Auto Group, LLC
      376 Tarrytown Road
      White Plains, New York 10607

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
CMS VOLKSWAGEN HOLDINGS, LLC and
HUDSON VALLEY VOLKSWAGEN, LLC

                                 **Plaintiffs,**

-against-

VOLKSWAGEN GROUP OF AMERICA, INC., and
LASH AUTO GROUP LLC,

                                 **Defendants.**

Index No.: 03 2539 /13

Dated Filed: **May 10, 2013**

**COMPLAINT**

Plaintiffs, CMS Volkswagen Holdings, LLC d/b/a Palisades Volkswagen ("Palisades") and Hudson Valley Volkswagen, LLC ("Hudson Valley"), by their attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., as and for their Complaint against Volkswagen Group of America, Inc. ("Volkswagen Group") and Lash Auto Group LLC ("Lash"), allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs Palisades and Hudson Valley are Volkswagen dealers located in Nyack and Wappingers Falls, New York, respectively.

2.     This action arises out of Volkswagen Group's use of an unfair and unreasonable benchmark to measure Palisades' sales performance, and its qualification for a monetary bonus program, which results in qualifying dealers, including Lash, paying less for new vehicles than non-qualifying dealers such as Palisades, all in violation of New York's Franchised Motor Vehicle Dealer Act, Veh. & Tr. L. §§ 460 *et. seq.* ("Dealer Act").

3.     Specifically, Volkswagen Group uses regional segment-adjusted market share to measure sales performance and to set sales objectives under a bonus incentive program for its dealers, including Palisades. In doing so, however, Volkswagen Group fails to take into account local market conditions beyond Palisades' control, particularly the fact that all of the German

brands, including Volkswagen, underperform in Rockland County compared to the rest of metropolitan New York.

4.      Volkswagen Group's use of this unfair and unreasonable benchmark to determine Palisades' sales objectives has caused injury in the form of lost sales and profits and the loss of franchise value.  Palisades is also thereby threatened with future harm, including the threat of termination for failing to meet Volkswagen Group's unfair and unreasonable sales performance standard.

5.      This action also arises out of Volkswagen Group's unreasonable conditioning of its consent to certain internal ownership changes involving Palisades' and Hudson Valley's parent company, the Premier Collection, LLC ("Premier"), which were made primarily for estate and gift tax planning purposes.  Specifically, Volkswagen Group has conditioned its consent to the ownership changes on the execution of various ancillary agreements including, without limitation, a corporate guaranty, a hold harmless agreement and covenant not to sue, and a subordination agreement, that would substantially alter the rights and obligations of their franchises.

6.      New York's Dealer Act prohibits automobile manufacturers and distributors from using unfair and unreasonable sales performance standards with dealers and from discriminating in price among dealers, including through sales incentive programs that affect price.  The Dealer Act also prohibits automobile manufacturers from unreasonably withholding consent to ownership changes and from unfairly and unreasonably modifying franchises.

7.      Accordingly, pursuant to the Dealer Act, Palisades seeks: (i) preliminary and permanent injunctive relief enjoining Volkswagen Group (a) from using regional segmented market share as a benchmark for evaluating Palisades sales performance, without considering the unique Rockland County market conditions affecting Palisades, and (b) from using regional

2

segmented market share to set sales objectives in an incentive program that results in other dealers paying less for new vehicles than Palisades; (ii) damages from Volkswagen Group for the harm the discriminatory sales incentive program and pricing has inflicted on Palisades in an amount to be determined at trial; and (iii) attorneys fees and costs as authorized by the Dealer Act.

8.      In addition, both Palisades and Hudson Valley seek: (i) injunctive relief enjoining Volkswagen Group from unreasonably withholding consent to Palisades' and Hudson Valley's internal ownership changes by conditioning its consent on unfair and unreasonable modifications of their franchises and (ii) attorney's fees and costs as authorized by the Dealer Act.

## THE PARTIES

9.      Plaintiff Palisades is a New York limited liability company, with its principal office in Rockland County, New York.  Palisades and Volkswagen Group are parties to a franchise agreement for the sale and service of Volkswagen motor vehicles.  Palisades is a "franchised motor vehicle dealer" as defined in section 462(7) of the Dealer Act.

10.     Plaintiff Hudson Valley is a New York limited liability company, with its principal place of business in Dutchess County, New York.  Hudson Valley and Volkswagen Group are parties to a franchise agreement for the sale and service of Volkswagen motor vehicles.  Hudson Valley is a franchised motor vehicle dealer as defined in section 462(7) of the Dealer Act.

11.     Defendant Volkswagen Group is a corporation organized and existing under the laws of the State of New Jersey with its principal office in the Commonwealth of Virginia. Volkswagen Group operates an unincorporated division under the assumed name Volkswagen of America, Inc.  Volkswagen Group is a "franchisor" as defined in section 462(8) of the Dealer

3

Act. This Court has jurisdiction over Volkswagen Group pursuant to CPLR §§ 301 and 302(a) (1)-(3).

12.     Upon information and belief, defendant Lash is a New York limited liability company with its principal office in Westchester County, New York. Palisades and Hudson Valley seek no affirmative relief against Lash, other than it be bound by any determination in this action as to the legality of Volkswagen Group's incentive program.   Lash is a necessary party within the meaning of CPLR § 1001 because it may be inequitably affected by any judgment entered in this action in that, among other things,  it would no longer receive the benefit of discriminatory pricing if the injunctive relief sought by Palisades is granted.

13.     Venue is proper in this Court pursuant to CPLR § 503.

## NEW YORK'S FRANCHISED
## MOTOR VEHICLE DEALER ACT

14.     The Dealer Act proscribes certain conduct on the part of automobile manufacturers and distributors (i.e. "franchisors") as unlawful and as unfair business practices. The prohibitions of the Dealer Act govern "notwithstanding the terms of [the] franchise contract." Dealer Act § 463(2).

15.     The Dealer Act forbids automobile franchisors from using "... [a]n unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement." Dealer Act § 463(2)(gg).

16.     The Dealer Act also forbids price discrimination on the sale of new automobiles to franchised dealers, including price discrimination resulting from programs that are not equally available to all franchised dealers:

> It shall be unlawful for any franchisor...[t]o sell or offer to sell any new motor vehicle to any franchised motor vehicle dealer at a lower actual price therefor than the actual price offered to any other franchised motor vehicle dealer for the same model vehicle similarly equipped or to utilize any device including, but not

4

> limited to, sales promotion plans or programs which result in such lesser actual price....This paragraph shall not be construed to prevent the offering of incentive programs or other discounts if such discounts are available to all franchised motor vehicle dealers in this state on a proportionately equal basis.

Dealer Act § 463(2)(g).

17.     The Dealer Act also prohibits manufacturers from unreasonably withholding their consent to transfers of interests by partners or stock holders of a franchised dealer:

> It shall be unlawful for any franchisor, notwithstanding the terms of any franchise contract...[to], unreasonably withhold consent to the sale or transfer of an interest, in whole or in part, to any other person or party...by any partners or stockholders of any...dealer.

Dealer Act § 463(2)(k).

18.     Finally, the Dealer Act prohibits manufacturers from "unfairly" modifying franchises. "A modification is deemed unfair if it is not undertaken in good faith, is not undertaken for good cause, or would adversely and substantially alter the rights, obligations, investment, or return an investment of the...dealer." Dealer Act § 462(2)(ff).

19.     The Dealer Act creates a private right of action for injunctive relief and damages and provides for the award of attorney's fees:

> A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

Dealer Act § 469(a).

### THE USE OF REGIONAL MARKET SHARE TO DETERMINE PALISADES' COMPLIANCE WITH THE DEALER AGREEMENT'S SALES PERFORMANCE REQUIREMENTS VIOLATES THE DEALER ACT

20.     Volkswagen Group calls its contractual measure of a dealer's sales performance the Dealer Sales Index, or "DSI."   DSI is calculated by applying the Volkswagen brand's regional segment-adjusted market share to that dealer's assigned market area (known in

5

Volkswagen Group's jargon as a Primary Area of Influence or "PAI"). In other words, to calculate a dealer's expected sales, Volkswagen Group determines the total number of all new vehicle registrations in a dealer's PAI and applies Volkswagen's segment-adjusted regional market share to that number.

21.     To illustrate, if there are a total of 10,000 new vehicle registrations in a dealer's PAI and Volkswagen's regional market share is 5%, the dealer must sell 500 new Volkswagens to be considered sales effective and be in compliance with the franchise agreement. The actual calculation is somewhat more complicated because only registrations of vehicles in segments (i.e. small sedans, large SUV's, etc.) in which Volkswagen competes are counted.

22.     However, Volkswagen Group's strict regional market share benchmark fails to consider the unique consumer characteristics of Rockland County that impact Palisades' ability to meet Volkswagen Group's sales performance objectives. Specifically, Volkswagen Group unreasonably and arbitrarily fails to consider that all of the German car brands have lower market shares in Rockland County compared to Westchester County and downstate New York overall.

23.     For example, the Volkswagen brand's market share in Rockland County is only about two-thirds of Volkswagen's market shares in Westchester County and New York's nine downstate counties overall.

24.     This phenomenon is consistent with the relative market shares of the other German brands in Rockland County compared to Westchester County and downstate New York overall. Like Volkswagen, the market shares of Audi, BMW and Mercedes-Benz in Rockland County are all significantly lower than their respective market shares in Westchester County and downstate New York overall. The fact that all of the German brands underperform in Rockland

6

County means that this underperformance is caused by local consumer preferences, and not dealer-specific operational factors.

25.      Volkswagen Group's failure to consider that Rockland County's unique consumer preferences affects Palisades' ability to meet the sales performance requirements of the franchise agreement is unlawful, as it violates section 463(2)(gg) of the Dealer Act, which prohibits Volkswagen Group from using an unreasonable, arbitrary and unfair performance standard to evaluate a dealer's compliance with a franchise agreement.

26.      Palisades' attempts to advise Volkswagen representatives of these peculiar Rockland County market characteristics which adversely impact Palisades' ability to meet sales targets have gone unheeded. Volkswagen Group has never provided any rationale, or cogent explanation, for its failure to consider the market in which Palisades operates in evaluating Palisades' sales performance.

## THE VARIABLE BONUS PROGRAM
## VIOLATES THE DEALER ACT

27.      In addition to using regional segment-adjusted market share in measuring a dealer's DSI, Volkswagen Group also uses it to set objectives in an incentive program that affects the price that dealers pay Volkswagen Group for new vehicles.

28.      In or about January 2011, Volkswagen Group instituted a new performance-based bonus program known as the Variable Bonus Program ("VBP"). One element of the VBP is the New Vehicle Sales Bonus under which dealers may receive rebates of up to 2% of the base manufacturer's suggested retail price ("MSRP") of each new vehicle sold. A dealer earns the rebates by meeting sales objectives that are tied to regional segment-adjusted market share.

29.      Like Volkswagen Group's calculation of DSI, Volkswagen Group sets VBP sales objectives without considering the particular circumstances of the market in which Palisades, or any other dealer, operates. Because of the underperformance of all German brands in Rockland

7

County, this methodology makes it virtually impossible for Palisades to achieve its sales targets and to earn VBP rebates on each new vehicle sold.

30.   Volkswagen Group fails to take into account the unique market characteristics of Rockland County and the fact that those market characteristics make it virtually impossible for Palisades to earn the New Vehicle Sales Bonus. The VBP thereby violates section 463(2)(g) of the Dealer Act because it is a sales incentive program that results in some dealers paying lower prices for new vehicles than other dealers, without satisfying the statutory safe harbor for programs that are available to all dealers on a proportionately equal basis.

## THE IMPACT OF LASH ON PALISADES' SALES AND PROFITS

31.   In or about June 2010, Volkswagen Group permitted the opening of a new dealership owned by necessary party Lash, in Elmsford, New York, just eight miles away from Palisades. Lash is located in Westchester County, where, in contrast to Rockland County, the market shares of the German-brands meet or exceed their overall market share in larger geographies.

32.   Since the opening of Lash in Westchester County, Palisades' ability to sell into Westchester County, where Volkswagen's sales exceed regional average, has been compromised. Before the opening of Lash, Palisades was able to effectively sell into Westchester County and thereby exceed regional market share and attain a DSI that met the requirements of the franchise agreement. However, after the opening of Lash, Palisades has been unable to attain a DSI that meets the requirements of the franchise agreement.

33.   In addition, because of its Westchester County location, Lash, unlike Palisades, is able to consistently earn the VBP's New Vehicle Sales Bonus, which gives it lower pricing on new motor vehicles. This gives Lash a powerful and unfair competitive advantage over Palisades.

8

34.    Upon information and belief, Lash's pricing advantage has caused Palisades to lose customers and sales to Lash, resulting in a loss of profits and franchise value for Palisades.

### VOLKSWAGEN GROUP UNLAWFULLY REFUSED TO CONSENT TO INTEREST TRANSFERS AMONG THE DEALERS' ULTIMATE OWNERS AND HAS CONDITIONED ITS CONSENT ON UNFAIR FRANCHISE MODIFICATIONS

35.    In September 1999, Volkswagen Group entered into a Dealer Agreement with Hudson Valley, listing four (4) individuals as owners:  Thomas Coughlin (70%); Richard Stavridis (10%); Sean Coughlin (10%); and John Matteson (10%).

36.    In March 2001, Volkswagen Group entered into a Dealer Agreement with Palisades, listing the same four (4) individuals as owners:  Thomas Coughlin (70%); Richard Stavridis (10%); Sean Coughlin (10%); and John Matteson (10%).

37.    Later in 2001, the individual members of Palisades and Hudson Valley contributed their membership interests to Premier, which they owned in the same percentages as they did for Palisades and Hudson Valley.  In other words, the owners of Palisades and Hudson Valley simply dropped those entities into a holding company.  In addition to its Volkswagen franchises, Premier also owns Audi, BMW, Land Rover, Jaguar, Mazda and Volvo franchises.

38.    Over the next decade Thomas Coughlin, the owner of 70% of the membership interests in Premier, began a series of transfers of beneficial interests in Premier to his family, primarily for estate and gift tax planning purposes. Over this period, Thomas transferred:  (a) an additional 6% interest to his son Sean, giving Sean a 16% membership interest in Premier; (b) a 2.5% membership interest to his daughter Patricia; (c) a 16% membership interest to CIC LLC, an entity created for the purpose of making gifts to his children; and (d) a 3% membership interest to CICGR, LLC, an entity created for the purpose of making gifts to his grandchildren.

39.    Accordingly, by the end of 2012, the membership interests in Premier, and by extension Hudson Valley and Palisades, were owned as follows:

| | |
|---|---|
| Thomas Coughlin | 42.5% |
| Sean Coughlin | 16.0% |
| Richard Stavridis | 10.0% |
| John Matteson | 10.0% |
| Patricia Coughlin | 2.5% |
| CIC, LLC | 16.0% |
| CICGR, LLC | 3.0% |

40.     Because Thomas Coughlin controls CIC and CICGR, he effectively controls 61.5% of the membership interests in Premier.

41.     In December 2012 and January 2013, Palisades and Hudson Valley notified Volkswagen Group of the foregoing.  Volkswagen Group requested, and Palisades and Hudson Valley supplied, additional documentation concerning the transfers and ownership structure of Premier.

42.     Thereafter, Volkswagen Group approved, in principle, the ownership structure; however, Volkswagen Group is also demanding that Palisades and Hudson Valley sign a new dealer agreement containing several side agreements that are patently unreasonable.

43.     Palisades and Hudson Valley do not object to certain of Volkswagen Group's reasonable requests that would result in Volkswagen Group being in the same position as if the individual members of Premier still owned Palisades and Hudson Valley directly.  But the modifications Volkswagen Group is demanding go well beyond that.

44.     Specifically, Volkswagen Group is demanding that Premier, Palisades and Hudson Valley sign corporate guarantees, hold harmless agreements and covenants not to sue, and dealer subordination agreements.  Volkswagen Group is also requiring that Thomas

10

Coughlin's children and grandchildren be listed as direct owners of Premier, merely because of their beneficial interests in CIC and CICGR.

45.     The unreasonableness of Volkswagen Group's demands is demonstrated by the fact that none of the other franchisors represented by Premier have imposed conditions similar to those sought by Volkswagen Group. Not BMW, not Land Rover, not Jaguar, not Mazda, not Volvo. Indeed, not even Audi, which, like the Volkswagen brand, is merely an operating unit of the Volkswagen Group.

46.     Simply put, Volkswagen is using the occasion of normal family gifting and tax planning to rewrite Hudson Valley's and Palisades' franchise agreement and impose new and onerous obligations.

**FIRST CAUSE OF ACTION BY PALISADES –**
**FOR VIOLATION OF THE DEALER ACT**
**(Declaratory Injunctive Relief Against**
**Volkswagen Group Regarding the VBP)**

47.     Palisades repeats and realleges paragraphs 1 through 46 above as if set forth herein.

48.     By using sales objectives that fail to consider the unique aspects of the market in which Palisades operates, Volkswagen Group's VBP violates section 463(2)(g) of the Dealer Act because it results in Volkswagen Group: (i) selling motor vehicles to Lash and other dealers at lower prices than Palisades; (ii) offering to sell new motor vehicles to other dealers at lower prices than offered by Volkswagen Group to Palisades; and (3) operating an incentive program that results in lower prices being paid by other dealers compared to Palisades.

49.     The VBP fails to satisfy the statutory safe harbor because it is not available to all dealers in New York State on a proportionately equal basis.

11

50. Section 469(a) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers, such as Palisades, to injunctive relief under a relaxed standard, with no showing of irreparable harm required.

51. As a direct and proximate result of the foregoing, Palisades is threatened with irreparable harm by the unlawful and discriminatory lower prices bestowed on Lash and other dealers by means of the VBP program.

52. Palisades has no adequate remedy at law.

53. By reason of the foregoing, Palisades is entitled to a declaratory judgment that, as currently administered, the VBP violates section 463(2)(g) of the Dealer Act and preliminary and permanent injunctive relief enjoining and restraining Volkswagen Group from administering the VBP program in a manner whereby the pricing advantages of the VBP are available to all dealers on a proportionately equal basis.

### SECOND CAUSE OF ACTION BY PALISADES – FOR VIOLATION OF THE DEALER ACT (Declaratory and Permanent Injunctive Relief Against Volkswagen Group Concerning the DSI)

54. Palisades repeats and realleges paragraphs 1 through 53 above as if set forth herein.

55. By calculating DSI, the measure of sales performance under the parties' franchise agreement, using a benchmark that fails to consider the unique aspects of the market in which Palisades operates, Volkswagen Group has violated section 463(2)(gg) of the Dealer Act by using an unreasonable and unfair sales performance standard in determining Palisades' compliance with its franchise agreement.

56. Section 469(a) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers, such as Palisades, to injunctive relief, without a showing of irreparable harm.

12

57.     As a direct and proximate result of the foregoing, Palisades is threatened with irreparable harm as it is in danger of falling out of compliance with the DSI requirements of its franchise agreement with Volkswagen Group.

58.     Palisades has no adequate remedy at law.

59.     By reason of the foregoing, Palisades is entitled to declaratory relief that Volkswagen Group's method of determining Palisades' DSI violates section 463(2)(gg) of the Dealer Act and permanent injunctive relief enjoining and restraining Volkswagen Group from using regional segment-adjusted market share as a sales performance benchmark to evaluate Palisades' compliance with the franchise agreement without considering the unique market characteristics in which Palisades operates in Rockland County.

### THIRD CAUSE OF ACTION BY PALISADES- FOR VIOLATION OF THE DEALER ACT
#### (Damages Against Volkswagen Group)

60.     Palisades repeats and realleges paragraphs 1 through 59 above as if set forth herein.

61.     By means of the VBP program, as detailed above, Volkswagen Group has violated section 463(2)(g) of the Dealer Act.

62.     As a result of the VBP, Volkswagen Group sells vehicles to Lash and other dealers at lower prices than it sells to Palisades.

63.     The price disadvantage experienced by Palisades has resulted in lost sales, lost profits and diminution of the value of Palisades' franchise.

64.     Section 469 of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers to an award of damages.

65.     As a direct and proximate result of the foregoing, Palisades has suffered damages in an amount to be determined at trial.

13

**FOURTH CAUSE OF ACTION BY PALISADES
AND HUDSON VALLEY-
FOR VIOLATION OF THE DEALER ACT**
**(Declaratory and Permanent Injunctive Relief Against Volkswagen Group
Concerning Consent to Ownership Changes)**

66.     Palisades and Hudson Valley repeats and realleges paragraphs 1 through 65 above as if set forth herein.

67.     By reason of the forgoing, Volkswagen Group is unreasonably withholding its consent to the transfer of Palisades and Hudson Valley to Premier and other intra-family interest transfers by conditioning its consent on unreasonable modifications to those franchises, in violation of section 463(2)(k) of the Dealer Act.

68.     Section 469(a) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers, such as Palisades and Hudson Valley, to injunctive relief, without a showing of irreparable harm.

69.     Nevertheless, as a direct and proximate result of the foregoing, Palisades and Hudson Valley are threatened with irreparable harm as they are in danger of falling out of compliance with the terms of their franchise agreements with Volkswagen Group.

70.     Palisades has no adequate remedy at law.

71.     By reason of the foregoing, Palisades is entitled to a declaratory judgment that Volkswagen Group has unreasonably withheld consent to transfers of interests in Palisades and Hudson Valley in violation of section 463(2)(k) of the Dealer Act and permanent injunctive relief requiring that Volkswagen Group consent to Palisades' and Hudson Valley's ownership changes without unreasonable conditions.

14

### FIFTH CAUSE OF ACTION BY PALISADES
### AND HUDSON VALLEY-
### FOR VIOLATION OF THE DEALER ACT
### (Declaratory and Permanent Injunctive Relief Against Volkswagen Group
### Concerning Franchise Modifications)

72.     Palisades and Hudson Valley repeat and realleges paragraphs 1 through 71 above as if set forth herein.

73.     By reason of the forgoing, Volkswagen Group is unreasonably withholding its consent to the transfer of Palisades and Hudson Valley to Premier and other intra-family interest transfers by conditioning its consent on unreasonable modifications to those franchises, in violation of section 463(2)(ff) of the Dealer Act.

74.     Section 469(a) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers, such as Palisades and Hudson Valley, to injunctive relief, without a showing of irreparable harm.

75.     Nevertheless, as a direct and proximate result of the foregoing, Palisades and Hudson Valley are threatened with irreparable harm as they are in danger of falling out of compliance with the terms of their franchise agreements with Volkswagen Group.

76.     Palisades has no adequate remedy at law.

77.     By reason of the foregoing, Palisades is entitled to a declaratory judgment that Volkswagen Group seeks to unfairly modify Palisades' and Hudson Valley's franchises in violation of section 463(2)(ff) of the Dealer Act and permanent injunctive relief requiring that Volkswagen Group consent to Palisades' and Hudson Valley's ownership changes without imposing unfair modifications on their franchises.

15

## SIXTH CAUSE OF ACTION BY PALISADES
## AND HUDSON VALLEY
## FOR VIOLATION OF THE DEALER ACT
### (Attorney's Fees, Costs and Expenses Against Volkswagen Group)

78.     Palisades and Hudson Valley repeat and realleges paragraphs 1 through 77 above as if set forth herein.

79.     Section 469 of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers to an award of reasonable attorney's fees, costs and disbursements.

80.     By reason of the foregoing, Palisades and Hudson Valley are entitled to an award of reasonable attorney's fees, costs and disbursements incurred in connection with this action, in amounts to be determined at trial.

WHEREFORE, Palisades and Hudson Valley demand judgment:

(i)     on the First Cause of Action, for a declaratory judgment and preliminary and permanent injunctive relief enjoining and restraining Volkswagen Group from administering the VBP in a discriminatory manner such that Palisades is unable to earn the new vehicle sales bonus due to the unique market characteristics of Rockland County;

(ii)    on the Second Cause of Action, for a declaratory judgment and permanent injunctive relief enjoining and restraining Volkswagen Group from using DSI or any measure of sales performance under Palisades' franchise agreement in a manner that is unreasonable, arbitrary or unfair, by failing to consider the unique market characteristics of Rockland County in evaluating Palisades compliance with the franchise agreement;

16

(iii)   on the Third Cause of Action, for an award of money damages in favor of Palisades against Volkswagen Group in an amount to be determined at trial;

(iv)   on the Fourth Cause of Action, for a declaratory judgment and permanent injunctive relief requiring that Volkswagen Group consent to Palisades' and Hudson Valley's ownership changes without unreasonable conditions;

(v)   on the Fifth Cause of Action, for a declaratory judgment and permanent injunctive relief requiring that Volkswagen Group consent to Palisades' and Hudson Valley's ownership changes without imposing unreasonable modifications to their franchises;

(vi)   on the Sixth Cause of Action, for an award in favor of Palisades and Hudson Valley against Volkswagen Group of their reasonable attorney's fees, costs and disbursements incurred in connection with this action, in amounts to be determined at trial; and

(vii)   for such other and further relief in favor of Palisades and Hudson Valley as this Court deems just and proper.

Dated: New York, New York
        May 10, 2013

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK, P.C.

By: _____
        Russell P. McRory
875 Third Avenue, 9th Fl.
New York, New York 10022
(212) 603-6300
Attorneys for Plaintiffs

17



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

CMS VOLKSWAGEN HOLDINGS, LLC and
HUDSON VALLEY VOLKSWAGEN, LLC,

                                    Plaintiffs,          Index No. 032539/13

        -against-

VOLKSWAGEN OF AMERICA, INC., and
LASH AUTO GROUP, LLC

                                    Defendants.

---

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

        PLEASE TAKE NOTICE that the matter captioned above, which has been commenced
by filing of the accompanying documents with the County Clerk, is subject to mandatory
electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This
notice is being served as required by Subdivision (b) (3) of that Section.

        For information about electronic filing, including access to Section 202.5-bb, consult the
website of the New York State Courts Electronic Filing System ("NYSCEF") at
www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or
efile@courts.state.ny.us.

Dated:  May 10, 2013
        New York, New York

                                ROBINSON BROG LEINWAND
                                GREENE GENOVESE & GLUCK, P.C.

                                By: _____
                                    Russell P. McRory, Esq.
                                    875 Third Ave, 9th Floor
                                    New York, NY 10022-0123
                                    (212) 603-6300
                                    rpm@robinsonbrog.com
                                    *Attorneys for Plaintiffs*

To: Volkswagen Group of America, Inc.
    c/o Corporation Service Company
    80 State Street
    Albany, NY 12207-2543

    Lash Auto Group, LLC
    376 Tarrytown Road
    White Plains, NY 10607

{00623639.DOC;1 }

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

CMS VOLKSWAGEN HOLDINGS, LLC and
HUDSON VALLEY VOLKSWAGEN, LLC,

                                   Plaintiffs,

              – against –

VOLKSWAGEN GROUP OF AMERICA, INC. and
LASH AUTO GROUP, LLC,

                                Defendants.

**STIPULATION
EXTENDING TIME TO
ANSWER OR
OTHERWISE MOVE**

Index No.: 032539/13

        **IT IS HEREBY STIPULATED AND AGREED** by and between the

undersigned attorneys for the parties that (i) the time for Defendant Volkswagen Group of America,

Inc. to answer or otherwise move with respect to the complaint in the above-referenced action be

and hereby is extended up to and including June 24, 2013; and (ii) this Stipulation shall not serve to

extend the time to file a notice of removal pursuant to 28 U.S.C. § 1446.

Dated:  New York, New York
       June 4, 2013

ROBINSON BROG LEINWAND GREENE
    GENOVESE & GLUCK P.C.

By: _____
      Russell P. McRory
*Attorney for Plaintiffs*
875 Third Avenue, 9th Fl.
New York, New York  10022
(212) 603-6300

HERRICK, FEINSTEIN LLP

By: _____
      Barry Werbin
      Anna M. Hershenberg
*Attorneys for Defendant Volkswagen Group of
America, Inc.*
2 Park Avenue
New York, New York  10016
(212) 592-1400

BARACK FERRAZZANO KIRSCHBAUM &
    NAGELBERG LLP
*Of Counsel for Defendant Volkswagen Group of
America, Inc.*
Randall L. Oyler*
Steven J. Yatvin*
200 West Madison Street, Suite 3900
Chicago, IL 60606
(312) 984-3100
*motions for admission pro hac vice to be filed*

Aldine ™ Enviro-Tab ™      Mixed Sources Cert no. SW-COC-1542  ©1996 FSC

## AFFIDAVIT OF MICHAEL C. WHEELER

I, Michael C. Wheeler, hereby state as follows under penalty of perjury:

1.      I make the statements in this declaration based upon my own personal knowledge.  If I were called to testify in a court of law, I could and would testify to the following facts.

2.      My name is Michael C. Wheeler.  I am currently employed by Volkswagen of America, Inc., a division of Volkswagen Group of America, Inc. ("VWoA"), where I am the Senior Manager, OMD & Incentives Competency Center.

3.      In my position as Senior Manager, OMD & Incentives Competency Center, I have access to certain company data, including data regarding the total MSRP of all of the new vehicles sold by Volkswagen dealers, including CMS Volkswagen Holdings, LLC d/b/a Palisades Volkswagen.

4.      In connection with this affidavit, I have reviewed relevant data, which reflects that in calendar year 2012, the total new vehicle base MSRP for all new vehicles retailed by Palisades was $ 13,732,085 and that, in the first quarter of 2013, the total new vehicle base MSRP for all new vehicles retailed by Palisades was $ 2,892,940.00.

FURTHER AFFIANT SAYETH NOT.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

STATE OF MICHIGAN              }
                                      } ss:

COUNTY OF OAKLAND        }

---

Michael C. Wheeler
Dealer Performance Manager
Volkswagen of America, Inc.

       On this 4th day of June, 2013, before me personally appeared Michael C. Wheeler who is known to me to be the person described in and who executed the foregoing.

---

Notary Public

NICHOLAS C. CARDONI
Notary Public, State of Michigan
County of Macomb
My Commission Expires Aug. 27, 2014
Acting in the County of Oakland

2

AFFIDAVIT

STATE OF NEW YORK          )

COUNTY OF WESTCHESTER      )     ss.:

Thomas J. Coughlin, being duly sworn, deposes and says:

1.     That I am the Manager of THE PREMIER COLLETION, LLC (TPC) and that I make this affidavit in that capacity.

2.     That TPC is a New York limited liability company with its principal place of business at 250 Kisco Avenue, Mt. Kisco, New York 10549. TPC was formed under the laws of the State of New York by the filing of Articles of Organization on March 14, 2000 and currently is in good standing in such state. The names, residence address and percentage interest of each of the members of TPC are set forth on Schedule A, attached hereto.

3.     Of the seven member of TPC, two are not natural persons. They are: (a) CIC, LLC, a New York limited liability company with its principal place of business at 250 Kisco Avenue, Mt. Kisco, New York ("CIC"), CIC was formed under the laws of the State of New York by the filing of Articles of Organization on December 24, 2002 and currently is in good standing in such state. The names, residence address and percentage interest of each of the members of CIC are set forth on Schedule B, attached hereto; and (b) CICGR, LLC a Connecticut limited liability company with its principal place of business at 143 Oenoke Ridge Rd, New Canaan, Connecticut 06840 ("CICGR"). CICGR was formed under the laws of the State of Connecticut by the filing of Articles of Organization on December 23, 2010 and currently is in the good standing in such state. The names, residence address and fractional interest of each of the members of CICGR are set forth on Schedule C, attached hereto.

4.     That TPC is the sole member of CMS VOLKSWAGEN HOLDINGS, LLC (CMS). CMS is a New York limited liability company with its principal place of business at 250 Kisco Avenue, Mt. Kisco, New York 10549. CMS was formed under the laws of the State of New York by the filing of Articles of Organization on August 10, 1998 and currently is in good standing in such state. CMS's federal and state taxpayer identification number is 06-1526563. CMS has not been a party to any bankruptcy or reorganization proceeding.

5.     That CMS is the sole member of PALISADES VOLKSWAGEN, LLC (PVW). PVW is a limited liability company formed under the laws of the State of New York by the filing of Articles of Organization on March 15, 2000 and currently is in good standing in such state. PVW's federal and state taxpayer identification number is 13-4134631. PVW has not been a party to any bankruptcy or reorganization proceeding.

6.     None of the membership interest of PVW, CMS, TPC, CIC, or CICGR have been pledged to or are subject to the right of any person other than the owner thereof to sell or purchase, vote or otherwise control.

7.    That there is a Dealer Agreement dated March 19, 2001 between Volkswagen of America, Inc. and CMS,

8.    Pursuant to that Dealer Agreement, CMS owns and operates the Volkswagen franchise presently located at 115 Route 59, Nyack, New York (the Dealership). For internal organizational purposes, CMS had intended to transfer the Dealership and any and all related assets into its wholly owned subsidiary, PVW. However, that process was never completed, with the result that CMS has been and continues to be the owner of the Dealership. CMS no longer intends to use PVW in its organizational structure or to transfer the Dealership out of CMS.

9.    CMS conducts its business as a Volkswagen dealership doing business as Palisades Volkswagen, for which an assumed name certificate has been filed in compliance with all legal requirements pertaining thereto.

10.    The manager of CMS is Thomas J. Coughlin. Mr. Coughlin controls 67.5% of the voting interests of TPC and CMS.

Thomas J. Coughlin

Sworn to before me this

__19__ day of October, 2012

Notary Public

SANDRA A. STARK
Notary Public, State of New York
No. 4919352
Qualified in Rockland County
Commission Expires Feb 22, _____

SCHEDULE A

Members of The Premier Collection, LLC

| Name | Residence address | Percentage interest |
|------|-------------------|---------------------|
| Thomas J. Coughlin | 143 Oenoke Ridge<br>New Canaan, CT06840 | 50.5% |
| Sean Coughlin | 5 Keeler Court<br>Ridgefield, CT06877 | 10% |
| Richard Stavridis | 27 Little Lake Run<br>Ossining, NY10562 | 10% |
| John Matteson | 5 Hidden Ridge Road<br>New City, NY10956 | 10% |
| Patricia Coughlin | 186 Field Point Road, #5B<br>Greenwich. CT 06830 | 2.5% |
| CIC, LLC | 250 Kisco Avenue<br>Mount Kisco, NY10549 | 15% |
| CICGR, LLC | 143 Oenoke Road<br>Greenwich, CT06831 | 2% |

SCHEDULE B

Members of CIC, LLC*

| Name | Residence address | Percentage interest |
|------|-------------------|---------------------|
| Sean Coughlin | 5 Keeler Court<br>Ridgefield, CT06877 | 25% |
| Patricia Coughlin | 186 Field Point Road, #5B<br>Greenwich, CT 06831 | 25% |
| Susan Bradbury | 2 Ox Ridge Lane<br>Darien, CT06820 | 25% |
| Brian Coughlin | 21 Bramble Lane<br>Riverside, CT06878 | 25% |

* The four members are the four children of Thomas J. Coughlin.

SCHEDULE C

### Members of CICGR, LLC*

| Name | Residence address | Membership Interest |
|------|-------------------|---------------------|
| Sean Coughlin as custodian For Michaela Coughlin | 5 Keeler Court Ridgefield, CT06877 | 1/7 |
| Sean Coughlin as custodian For Lauren Coughlin | 5 Keeler Court Ridgefield, CT06877 | 1/7 |
| Sean Coughlin as custodian For Jack Coughlin | 5 Keeler Court Ridgefield, CT06877 | 1/7 |
| John Bradbury as custodian For John R. Bradbury III | 2 Ox Ridge Lane Darien, CT06820 | 1/7 |
| John Bradbury as custodian For Lily Bradbury | 2 Ox Ridge Lane Darien, CT06820 | 1/7 |
| Brian Coughlin as custodian For Thomas D. Coughlin | 21 Bramble Lane Riverside, CT06878 | 1/7 |
| Brian Coughlin as custodian For Fiona Coughlin | 21 Bramble Lane Riverside, CT06878 | 1/7 |

* The members are parents of the grandchildren of Thomas J. Coughlin, as custodians for their respective children.

Aldine ™ Enviro-Tab ™ 

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CMS VOLKSWAGEN HOLDINGS, LLC<br>and<br>HUDSON VALLEY VOLKSWAGEN,<br>LLC,<br><br>          Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA,<br>INC., & LASH AUTO GROUP, LLC,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. _____ |

## LASH AUTO GROUP LLC'S CONSENT TO NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Lash Auto Group, LLC ("Lash"), by its undersigned attorney, hereby consents to the removal of the above-captioned civil action, and all claims and causes of action therein, from the Supreme Court of the State of New York, County of Rockland, to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1446.  Lash recognizes that it is a non-diverse defendant, but states that it has no interest in this action, should not be considered for purposes of diversity jurisdiction, and should be dismissed from this action.

Dated:    June 5, 2013

Respectfully submitted,

_Danielle Lash_

Attorney for Lash Auto Group, LLC

Danielle Lash, Esq.
376 Tarrytown Road
White Plains, NY 10607