UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CMS VOLKSWAGEN HOLDINGS, LLC and                            :
HUDSON VALLEY VOLKSWAGEN, LLC                               :
                                                            :
                              Plaintiffs,                   :        13-cv-03929 (NSR)
           -against-                                        :        OPINION AND ORDER
                                                            :
VOLKSWAGEN GROUP OF AMERICA, INC.,                          :
and LASH AUTO GROUP, LLC                                    :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      Plaintiffs, CMS Volkswagen Holdings, LLC ("Palisades") and Hudson Valley

Volkswagen, LLC ("Hudson Valley") (collectively, "Plaintiffs") commenced this action against

Defendant Volkswagen Group of America, Inc. ("Defendant") and Lash Auto Group, LLC

("Lash Auto Group") in the Supreme Court of the State of New York, County of Rockland,

alleging violations of New York's Franchised Motor Vehicle Dealer Act (the "Dealer Act"),

N.Y. VEH. & TRAF. L. §§ 460 et seq.[1]  Defendant Volkswagen Group of America removed the

action to this court on the basis of diversity jurisdiction by Notice of Removal on June 7, 2013.

      Before the court is Plaintiffs' motion to remand this case to state court for adjudication on

the basis that the parties are not completely diverse.  For the reasons set forth below, Plaintiffs'

motion is DENIED.

---

[1] Plaintiff alleges violations of Dealer Act §§ 463(2)(gg), 463(2)(g), 463(2)(k), and 462(2)(ff).  Because Dealer Act
§§ 463(2)(k) and 462(2)(ff) deal with the transfer of interests within Palisades and Hudson Valley, they are not
critical for this motion to remand and therefore will not be discussed.

### I.  Background[2]

Plaintiffs Palisades and Hudson Valley are New York limited liability companies that share common ownership and are "franchised motor vehicle dealers" as defined in §462(7) of the Dealer Act.  Both entities are parties to franchise agreements to sell and service Volkswagen motor vehicles.  Palisades is a Volkswagen dealer located in Palisades, New York, in Rockland County, and Hudson Valley is a Volkswagen dealer located in Hudson Valley, New York.  Volkswagen Group is a New Jersey corporation with its principal place of business in Virginia.  Lash Auto Group is a New York limited liability company that operates a Volkswagen dealership in White Plains, New York.

Volkswagen Group, though its operating unit Volkswagen of America ("VWoA"), is the United States importer and distributor of Volkswagen motor vehicles.  VoWA sells vehicles through approximately 625 dealers throughout the Unites States.  VoWA measures a dealer's sales performance (called Dealer Sales Index, or "DSI") by applying a regional segment-adjusted market share to a particular dealer's market area (called Primary Area of Influence, or "PAI") to determine if a dealer is "sales effective" and in compliance with the franchise agreement.  The same formula is applied to every dealer, but because of the market potential in a given area and the historical number of sales made by the dealer, each dealer has a different sales objective.  Plaintiffs allege that this system of calculating a dealer's compliance with a franchise agreement violates section 463(2)(gg) of the Dealer Act because it "fails to consider the unique consumer characteristics of Rockland County that impact Palisades' ability to meet Volkswagen Group's sales performance objectives."  Pl. Compl. ¶22.  Plaintiffs claim that all German car brands have

---

[2] Unless otherwise noted, the facts are taken from Plaintiffs' Complaint, Defendant's Notice of Removal, and the moving papers associated with Plaintiffs' Motion to Remand.

2

lower market shares in Rockland County compared to Westchester County, which is caused by consumer preferences, and that by not taking this factor into consideration, Volkswagen Group violates 463(2)(gg), which prohibits a franchisor from "us[ing] an unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement." N.Y. VEH. & TRAF. L. §463(2)(gg).

This same type of formula is used in Volkswagen's Variable Bonus Program ("VBP"). Through the VBP, a dealer may receive a rebate of up to 2% of the manufacturer's suggested retail price of each new vehicle sold if the dealer meets certain qualifying criteria and sells a certain number of new vehicles sufficient to satisfy the new vehicle sales objective established for that dealer, as explained above. Plaintiffs allege that the VBP violates section 463(2)(g) of the Dealer Act, which prohibits a franchisor from offering vehicles at different prices to different dealers, and includes a safe harbor provision for incentive programs that are "reasonably available to all franchised motor vehicle dealers in this state on a proportionately equal basis." N.Y. VEH. & TRAF. L. § 463(2)(g) (McKinney).

Lash Auto Group opened a Volkswagen dealership in June 2010 in Elmsford, New York, which is located in Westchester County, eight miles from Palisades' dealership. Plaintiffs claim that since Lash opened, Palisades' ability to sell into Westchester County – where Volkswagen's sales exceed regional average – has diminished. As a result, Palisades is no longer able to attain a DSI that meets the franchise agreement requirements or qualify for the VBP. Plaintiffs allege that this gives Lash an unfair competitive advantage over Palisades and has resulted in lost profits for Palisades.

## II. Procedural History

Plaintiffs filed a summons and complaint in the Supreme Court of the State of New York, County of Rockland on May 10, 2013.  On June 7, 2013, Defendant Volkswagen Group filed a Notice of Removal alleging that Lash Auto Group, the diversity-destroying defendant, should not be considered a real party to the action.  Therefore, Defendant claimed, there is federal subject matter jurisdiction because there is diversity of citizenship and the amount in controversy exceeds $75,000.  Volkswagen also submitted Lash Auto Group's Consent to Notice of Removal, in which Lash states, "Lash recognizes that it is a non-diverse defendant, but states that it has no interest in this action, should not be considered for purposes of diversity jurisdiction, and should be dismissed from this action."  Def. Notice of Removal Ex. E.  Following the notice of removal, Plaintiffs and Lash entered into a settlement agreement and a Stipulated Order of Partial Dismissal was So Ordered on September 5, 2013.  Plaintiffs filed a Notice of Voluntary Dismissal dismissing Lash from this action without prejudice on September 6, 2013.  On October 31, 2013, Defendant filed this Motion to Remand the case to state court.

**III. Discussion**

    **A.  Legal Standard**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  The removal jurisdiction of the federal courts is limited and should be "scrupulously confined."  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Noel v. J.P. Morgan Chase Bank N.A.*, 918 F. Supp. 2d 123, 125 (E.D.N.Y. 2013).  "'Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns.'" *James v. Gardner*, 2004 WL

2624004, at *1 (E.D.N.Y. Nov. 10, 2004) (quoting *In re NASDAQ Mkt. Makers Antitrust Litig.*, 929 F.Supp. 174, 178 (S.D.N.Y. 1996)).

Section 1447(c) states, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).  "'[A]ny party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'"  *United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co. v. Housing Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)).  In a case where removal of the action is based on diversity, the court "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing – whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal."  *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004); *see also Albstein v. Six Flags Entm't Corp.*, No. 10 Civ. 5840(RJH), 2010 WL 4371433, at *2 (S.D.N.Y. Nov. 4, 2010) ("Where removal is predicated on diversity, the parties must be diverse both at the time of removal and at the time the state court complaint was filed.").

On a motion for remand, the removing defendant "bears the burden of demonstrating the propriety of removal." *California Pub. Emps.' Ret. Sys. v. Worldcom, Inc.,* 368 F.3d 86, 100 (2d Cir. 2004) (citations omitted); *see also Veneruso v. Mount Vernon Neighborhood Health Ctr.,* No. 09–CV–8703, 2013 WL 1187445, at *2 (S.D.N.Y. Mar. 22, 2013) ("As a general matter, the party asserting federal jurisdiction bears the burden of proving that the case is properly in federal court." (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936))). Furthermore, "[w]hen a party removes a state court action to the federal court on the basis of

5

diversity of citizenship, and the party seeking remand challenges the jurisdictional predicate for removal, the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R.G. Barry Co. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d. Cir. 1979) (citing *McNutt*, 298 U.S. at 189).

Federal district courts have original jurisdiction over civil matters "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ." 28 U.S.C. § 1332(a).  "Complete diversity of citizenship of the parties is required, since an 'action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (citing 28 U.S.C. § 1441(b)).  Complete diversity does not exist if any plaintiff has the same citizenship as any defendant.  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 88 (2005); *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998).  However, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy."  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998).  The appropriate challenge by a removing defendant claiming that a diversity-destroying party has no connection to the controversy would be to assert that there was "fraudulent joinder" of a non-diverse party.  *Id.*

The removing defendant "must show fraudulent joinder by clear and convincing evidence." *Sonnenblick-Goldman, Co., v. ITT Corp.*, 912 F.Supp 85, 88 (S.D.N.Y. 1996).  "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has

6

been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461; *see also Sonnenblick-Goldman*, 912 F.Supp at 88 ("In evaluating the existence of fraudulent joinder, the Court must determine whether the mere possibility exists that plaintiff can establish any cause of action against a defendant.").  The court may look outside the pleadings to determine whether to apply the fraudulent joinder doctrine. *See Buildings and Const. Trades Council of Buffalo, N.Y. and Vicinity v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006) ("Although this ruling required the district court to look outside the pleadings, a court has discretion to do so when determining whether it has subject matter jurisdiction." (citing *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002))).

### B.  Analysis

It is undisputed that Plaintiffs are citizens of New York and Connecticut and that Defendant Volkswagen Group is a citizen of New Jersey and Virginia.  Plaintiffs originally joined Lash Auto Group as a necessary party under CPLR §1001.  Lash Auto Group is an undisputed citizen of New York and Connecticut and therefore, if not fraudulently joined, this court does not have subject matter jurisdiction over this action because there is no diversity of citizenship.

#### i.  *Audi of Smithtown v. Volkswagen of America, Inc.*

Plaintiffs place substantial emphasis on the case *Audi of Smithtown v. Volkswagen of America, Inc.*, No. 08-CV-1773 (JFB)(AKT), 2009 WL 385541 (E.D.N.Y. Feb. 19, 2009), stating that it is "on all fours" with this case and as such, it merits a brief summary.  In *Audi of Smithtown*, two Audi dealerships on Long Island commenced an action in state court against

Volkswagen of America (d/b/a Audi of America) and Atlantic Imports, another Audi dealership, alleging violations of the Dealer Act.  Specifically, plaintiffs alleged that incentive programs used by Audi of America violated price discrimination provisions of the Dealer Act because the programs resulted in new dealers, including Atlantic Imports, and existing dealers, including plaintiffs, being treated differently.  As a result of the incentive programs, plaintiffs alleged, "Audi does not require Atlantic Imports to meet the same requirements for receiving payments that Audi requires of its other existing New York dealers."  *Audi of Smithtown*, 2009 WL 385541, at *1.  Volkswagen of America removed the case to the Eastern District of New York on the basis that Atlantic Imports was fraudulently joined.  On a motion to remand, the court found that Atlantic Imports had not been fraudulently joined and that because Atlantic Imports was a necessary party under New York state law, it destroyed diversity.  Accordingly, the court granted plaintiffs' motion to remand.  Although the issue was not briefed, the court did address the fact that plaintiffs and Atlantic Imports had entered into a settlement agreement after the case was removed pursuant to which Atlantic Imports was voluntarily dismissed from the case.  The court found that the dismissal of the diversity-destroying defendant was not critical because the court retained jurisdiction over the settlement and also because the court found that the jurisdictional amount in controversy had not been met.

Critically, plaintiffs in Audi of Smithtown were challenging different incentive programs than the one at use by Volkswagen Group here.  The incentive programs in *Audi of Smithtown* automatically placed new dealerships into a higher qualifying level, allowing them to purchase lease-back vehicles at a lower price and allowing new dealers to meet certain sales objectives to qualify for a purchase bonus of 1.5% on the sale of new vehicles rather than requiring them to purchase a percentage of cars whose leases expired (lease-returns), as existing dealers were

8

required to do.  *Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, 954 N.Y.S.2d 106, 1-2 (N.Y. App. Div. 2d Dept. 2012).  Also significant is that the Eastern District found that Atlantic Imports was a necessary party specifically because "plaintiffs' complaint seeks injunctive relief restraining Audi from administering its incentive programs in connection with its dealer agreement with Atlantic Imports, [which would] certainly inequitably affect Atlantic Imports by precluding Audi from providing certain benefits to Atlantic Imports." *Audi of Smithtown*, 2009 WL 385541, at *5.  Finally, the Court notes that although persuasive, *Audi of Smithtown* is not binding on this court.

### ii.  Fraudulent Joinder Standard

Defendant asks the court to apply the doctrine of fraudulent joinder and find that Lash Auto Group's citizenship should be disregarded in determining whether diversity, and thus subject matter jurisdiction, exists.  The Second Circuit case of *Pampillonia v. RJR Nabisco, Inc.* set forth the standard for fraudulent joinder: by "clear and convincing evidence," the Defendant must show that "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461. Despite Defendant's arguments to the contrary, "[e]ven though federal law applies to the question of fraudulent joinder, the ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." *Federal Insurance Co. v. Tyco International Ltd.*, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006) (citing 16 James Wm. Moore, et al., Moore's Federal Practice § 107.14[2][c][iv][C] (3d ed. 2003)).  The Second Circuit has applied this principle, stating, "Under the doctrine [of fraudulent joinder], courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant *could be asserted in state court*." *Briarpatch*

*Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (emphasis added) (holding that defendants did not meet their burden of showing that collateral estoppel would have prevented the plaintiff's claims from going forward in New York state court); *see also Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) ("Joinder will be considered fraudulent when it is established that there can be no recovery against the defendant[s] *under the law of the state on the cause alleged*." (emphasis added) (internal citation and original brackets omitted)); *Pampillonia*, 138 F.3d at 461 ("In order to show . . . 'fraudulent joinder' . . . , the defendant must demonstrate, by clear and convincing evidence, . . . that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant *in state court*." (emphasis added)); *Federal Insurance Co. v. Tyco International Ltd.*, 422 F. Supp. 2d 357, 381 (S.D.N.Y. 2006) ("[T]his . . . means that federal law governs the question of a how a court should determine whether joinder is fraudulent, but not that federal law determines whether there has been fraudulent joinder. Indeed, as noted previously, the courts are clear that in deciding if there has been a fraudulent joinder of a non-diverse defendant, state law determines whether a plaintiff could possibly substantiate a cause of action and thus, properly sue a non-diverse defendant."); *Audi of Smithtown*, 2009 WL 385541, at *5 n.2 ("Under these circumstances, where the issue is fraudulent joinder, the Court looks to state law in order to determine the nature of [the non-diverse defendant's] interest in this litigation for jurisdictional purposes at the time of removal."). Thus, the proper standard to be applied in considering whether Lash Auto Group was fraudulently joined is whether Plaintiff could state a cause of action against Lash Auto Group under state law.

In *Audi of Smithtown*, the court found that the term "cause of action" in *Pampillonia* should be disregarded in favor of "indispensable parties." *Audi of Smithtown*, 2009 WL 385541,

10

at *4 ("The use of that 'cause of action' language simply reflects the fact that generally a defendant is named because plaintiff seeks some affirmative relief against the defendant in connection with a cause of action and, under such circumstances, the jurisdictional inquiry focuses on whether a cause of action exists."). The court found that "*Pampillonia* should not be read to stand for the proposition that the existence of a 'cause of action' is the sole basis upon which a defendant can properly be considered for diversity of jurisdiction purposes," *id*, and noted that such interpretation comports with courts' interpretation of joinder under Rule 19 of the Federal Rules of Civil Procedure. *Id* at *5 n.1; *see also Kuperstein v. Hoffman–Laroche, Inc.*, 457 F. Supp. 2d 467, 471–72 (S.D.N.Y. 2006) (applying state pleading standards, a procedural issue, when determining whether plaintiffs could state a claim against a non-diverse defendant in state court); *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009) (same). This Court agrees that in applying *Pampillonia*'s standard, the question of whether Plaintiffs could state an action against Lash Auto Group depends on whether Lash was a necessary party under state law. [3]

---

[3] Defendant asserts that *Audi of Smithtown* applied an alternate standard for fraudulent joinder from the standard as articulated by the Second Circuit. Defendant states that the "alternative" standard is that a non-diverse defendant is deemed fraudulently joined where "there is no state procedural law that requires the defendant to be joined as a defendant in the lawsuit." Def. Mem. Supp. 10. Defendant repeatedly emphasizes that this alternative standard is that there is no "state procedural law," ignoring the fact that the Second Circuit directs the court to determine whether the defendant can demonstrate that plaintiff was unable to state a cause of action against the diversity-destroying defendant in state court generally. The language in *Pampillonia* does not preclude the possibility of state procedural rules being implicated. As *Audi of Smithtown* notes, the idea that necessary and indispensable parties be considered for diversity jurisdiction purposes is strengthened by Second Circuit cases holding that for Rule 19 of the Federal Rules of Civil Procedure purposes, such parties should be considered. *See Audi of Smithtown*, 2009 WL 385541, at *4 n.1.

Defendants further assert that this supposed alternative standard does not comport with the diversity jurisdiction statute. The Court disagrees. 28 U.S.C. §1332 states, in relevant part, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. §1332(a)(1). Defendant claims that "a controversy does not exist 'between' a plaintiff and a defendant against whom the plaintiff cannot assert a cause of

### iii.  Necessary Party

Under the New York Civil Practice Laws & Rules, "[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants."  N.Y. C.P.L.R. §1001(a).  Thus, a necessary party is one who might be "inequitably affected" by the relief granted by the court.  "Overall, the New York Rules for compulsory joinder must be read against their motivating purpose, which is to prevent duplicative litigation and to protect the rights of persons who may be adversely affected by the outcome."  *Council v. Better Homes Depot*, No. 04 CV 5620(NGG)(KAM),  2006 WL 2376381, at *5 (S.D.N.Y Aug. 16, 2006).

Plaintiffs argue that if the court grants a judgment in its favor, Lash Auto Group might be inequitably affected because it would "no longer receive the benefit of discriminatory pricing," Pl. Compl. ¶12, and therefore Lash Auto Group is a necessary party under state law. *Audi of Smithtown*, in addressing whether a dealer receiving benefits under an incentive program would be inequitably affected by a judgment in favor of plaintiffs, stated that "[b]ecause plaintiffs' complaint seeks injunctive relief restraining Audi from administering its incentive programs in connection with its dealer agreement with Atlantic Imports, such relief would certainly inequitably affect Atlantic Imports by precluding Audi from providing certain benefits

---

action." Def. Mem. Supp. 12. Again, this does not comport with Second Circuit precedent regarding necessary parties being joined under Rule 19.  *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 384 (2d Cir. 2006) ("If the district court's ruling that Visa is not a necessary and indispensable party is erroneous, then, because Visa's joinder would destroy diversity jurisdiction, the underlying action must be dismissed for lack of subject matter jurisdiction."); *see also Lee v. Kim*, No. 97-CV-4406 (DC), 1998 WL 20003, at *6 (S.D.N.Y. Jan. 20, 1998) ("I note that diversity jurisdiction does not sustain this action because an indispensable party to this action ... has not been joined, and joinder would destroy diversity as between the parties.").

to Atlantic Imports."[4] *Audi of Smithtown*, 2009 WL 385541 at *5. The case at hand is distinguishable because plaintiffs here are not requesting affirmative relief against Lash Auto Group other than it "be bound by any determination in this action as to the legality of Volkswagen Group's incentive program." *Id* at ¶ 12. If plaintiffs in *Audi of Smithtown* received a judgment in their favor, Atlantic Imports would have stopped receiving payments from Audi of America, whereas here, Lash Auto Group does not automatically lose anything, even if the court determines that the VBP violates the Dealer Act.

Plaintiffs in this case ask the court for injunctive relief "enjoining and restraining Volkswagen Group from administering the VBP in a discriminatory manner such that Palisades is unable to earn the new vehicle sales bonus . . . ." Pl.'s Compl. 16. Plaintiffs believe that, notwithstanding the specific language of its request for relief, the court could grant relief here that would affect the alleged advantage that Lash currently has over Palisades, and thus Lash might be affected. However, not all parties that may somehow be affected by an outcome are necessary parties. The language of the statute limits necessary joinder to parties who are inequitably affected and "[c]ase law interpreting CPLR 1001(a) is clear . . . that merely because an outcome may be 'adverse' does not render it 'inequitable.'" *Awwad v. Capital Region Otolaryngology Head & Neck Group LLP*, 856 N.Y.S.2d 22 (2007). The issue to be resolved here is whether the VBP violates the Dealer Act by not taking into account a factor – geographical consumer preference – that allegedly makes it impossible for Palisades to qualify for Volkswagen Group's incentive program. Plaintiffs' complaint alleges that the VBP violates

---

[4] The specific relief requested by plaintiffs in *Audi of Smithtown* was "preliminary and permanent and injunctive relief enjoining and restraining [Audi] from administering its Incentive Programs so as to provide Atlantic Imports with any unlawful, discriminatory benefit." *Audi of Smithtown*, 2009 WL 385541 at *2 (internal citation and quotation omitted).

the Dealer Act with or without Lash Auto Group, and indeed logic provides the same result. Since the VBP formula is applied equally to all dealerships, the existence of Lash Auto Group should not impact the legality of the formula.  Noticeably, Plaintiffs do not allege that the VBP is administered in an unfair way with respect to Hudson Valley.  Although Lash Auto Group might be affected by a judgment in favor of Palisades in this action, so too may other Volkswagen dealerships in New York.  Lash Auto Group is implicated solely because its opening in 2010 affected Palisades' ability to sell into a certain geographic area.  This fact is not critical in determining whether the VBP violates the Dealer Act.

"The language of the CPLR clearly does not allow joinder of all persons who might feel some effect or impact from a judicial order or judgment . . . ."  *Id*.  "[W]hen the interests of the nonjoined party and a party who has been joined stand or fall together . . . joinder may be excused." *Matter of Doner v. Comptroller of State of NY*, 262 A.D.2d 750, 751 (App. Div. 3rd Dept. 1999) (internal quotation and citation omitted).  Although the interests of Lash Auto Group and Volkswagen Group do not necessarily "stand or fall" together as that term has been interpreted by the courts, Lash Auto Group simply will not be inequitably affected by a judgment.  Further, Lash Auto Group is not a necessary party because it does not have interests that will be "directly affected by the adjudication of the lawsuit," *Audi of Smithtown*, 2009 WL 385541 at *4, making it a nominal, or formal party.

### iv.  Nominal or Formal Party

As the Second Circuit has recognized, "it has long been established that the citizens' upon whose diversity a [party] grounds jurisdiction must be real and substantial parties to the controversy . . . [A] federal court must disregard nominal or formal parties and rest jurisdiction

only upon the citizenship of real parties to the controversy." *St. Paul Fire and Marine Insurance Company v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) (citations omitted); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).  The provision of the Dealer Act that Plaintiffs rely on prohibits the use of "an unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement."  N.Y. VEH. & TRAF. L. §463(2)(gg).  If the VBP is held to violate this section, the determination will affect how Volkswagen Group administers the VBP with respect to all of its dealers.  In so far as a judgment in favor of Plaintiffs will affect Lash Auto Group, so too will it affect every other Volkswagen dealership in New York.  *Audi of Volkswagen* is distinguishable because in that case, the incentive program distinguished between new dealers and existing dealers and a judgment in favor of Plaintiffs would have precluded the non-diverse defendant from receiving "payments [] in excess of $75,000."  *Audi of Smithtown*, 2009 WL 385541, at *5.  *Hand v. Chrysler Corp.*, 997 F.Supp 553 (D.Vt. 1998), another case relied on by Plaintiffs, is similarly distinguishable because the necessary party in that case would have been precluded from obtaining a dealership franchise if judgment was rendered in the plaintiff's favor.

### v.   The Effect of Lash's Dismissal

"It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)).  At the time of filing, this case included a defendant, Lash Auto Group, that shared the same citizenship as the plaintiffs, and complete diversity did not exist.  Subsequent to the removal of this case by Defendant Volkswagen Group, Plaintiffs and Lash Auto Group entered into a stipulation of settlement, dismissing Lash from the case.  This court signed the Stipulated Order of Partial

Dismissal on September 5, 2013 in which Lash Auto Group agreed "to be bound by and comply with any order or judgment of this Court. . . ."  Since the Court determined above that Lash was not a real party to the controversy at the time of filing and at all times throughout, it does not need to reach the issue of the effect of the voluntary dismissal of Lash Auto Group from the action.

### vi.  Amount in Controversy

In order to have subject matter jurisdiction over an action based on diversity of citizenship, the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  "[I]f the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction as a basis for removing the plaintiff's action from state court."  *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 268, 273-74 (2d Cir. 1994).  "'The Second Circuit has held that the amount in controversy for jurisdictional purposes should be measured strictly from the plaintiff's perspective, without regard to the amount at stake for any other party.'"  *Leyse v. Domino's Pizza LLC*, No. 04-CV-2411 (HB), 2004 WL 1900328, at *3 (S.D.N.Y. Aug. 24, 2004) (quoting 15 MOORE'S FEDERAL PRACTICE-CIVIL § 102.109[3], at 102-99 (3d ed. 1998)).  In the Notice of Removal, Defendant alleges facts that satisfy to the court that the amount in controversy exceeds $75,000.  Based on the allegations in Plaintiffs' complaint, the rebates Plaintiffs are not receiving under the VBP, which amount to 2% of the base manufacturer's suggested retail price, amount to more than $300,000 between 2012 and the first quarter of 2013.  Plaintiffs do not dispute this fact.  The Court finds that the Defendant has adequately alleged the jurisdictional minimum for federal jurisdiction.

16

## Conclusion

Based on the foregoing, the Court determines that the citizenship of Lash Auto Group should be disregarded for purposes of determining diversity citizenship and therefore, since the parties are diverse and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction over this action. Accordingly, Plaintiffs' motion to remand the case to state court is DENIED. The Clerk of Court is respectfully directed to terminate this motion (Doc. 21).

Dated: December 6th, 2013                    SO ORDERED:

      White Plains, New York


NELSON S. ROMÁN
United States District Judge

17