UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CMS VOLKSWAGEN HOLDINGS, LLC and
HUDSON VALLEY VOLKSWAGEN, LLC,

                    Plaintiffs,         13-cv-03929 (NSR)

-against-                              OPINION AND ORDER

VOLKSWAGEN GROUP OF AMERICA, INC.,
and LASH AUTO GROUP, LLC,

                    Defendants.
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      Hudson Valley Volkswagen, LLC ("Hudson Valley") and CMS Volkswagen Holdings LLC, doing business as Palisades Volkswagen ("Palisades") (together, "Plaintiffs"), brought this action against Volkswagen Group of America ("Defendant")[1] for violations of the New York Franchised Motor Vehicle Dealer Act ("Dealer Act"), N.Y. VEH. & TRAF. L. § 460 et seq. Before the Court is Defendant's motion to dismiss each claim of the Complaint and Plaintiffs' motion to amend its Complaint. For the following reasons, Defendant's motion and Plaintiffs' motion are both GRANTED in part and DENIED in part.

I.    Background[2]

      Hudson Valley is a Volkswagen dealership operating in Wappingers Falls, New York. Palisades is a Volkswagen dealership operating in Nyack, New York. Through its operating unit,

---

[1] Although this action was initially brought against VWoA and Lash Auto Group, Lash Auto Group was voluntarily dismissed from the action on September 6, 2013. Therefore, there remains only one defendant, VWoA.

[2] The following facts are taken from Plaintiffs' Complaint except where noted otherwise and are accepted as true for purposes of this motion.



1

Volkswagen of America, Inc. ("VWoA"), Defendant is the U.S. importer and distributor of Volkswagen brand motor vehicles. VWoA is a "franchisor" under the Dealer Act and enters into a Dealer Agreement with each of its U.S. dealerships, including both Hudson Valley and Palisades. Hudson Valley entered into a Dealer Agreement with VWoA in 1999 and Palisades entered into a Dealer Agreement in 2001.

The Dealer Agreement supplies the parameter by which VWoA evaluates each dealer's sales performance, called the Dealer Sales Index ("DSI"). The DSI is calculated by applying Volkswagen's regional segment-adjusted market share to a dealer's Primary Area of Influence ("PAI"). A dealer's PAI is a geographic area "corresponding to U.S. census tract information." Steven J. Yatvin Dec. Ex. C Art 16(6). Plaintiffs explain the calculation of DSI as follows: if there are 100,000 new vehicle registrations within a dealer's PAI and Volkswagen has a market share of 5%, that dealer must sell 500 new Volkswagens to be in compliance with the Dealer Agreement. This is a simplified version of the formula because in reality, VWoA only counts registrations of vehicles in segments in which Volkswagen competes (i.e., small sedans, large SUVs, etc.). This calculation is applied to all dealers when determining each individual dealer's DSI.

The DSI, in addition to being the benchmark by which sales performance is measured, is also used to set objectives for dealers in a program that Volkswagen calls the Variable Bonus Program ("VBP"). The VBP was initiated by VWoA in January 2011 and in relevant part, it pays dealers a bonus of 2% of the Manufacturers Sales Retail Price ("MSRP") of each new vehicle sold if a dealer meets certain sales objectives.

The Dealer Agreement also contains certain provisions regarding the ownership and management of the dealership. In Hudson Valley's Dealer Agreement, four individuals were

listed as having an ownership interest in the dealership: Thomas Coughlin (70%), Richard Stavridis (10%), Sean Coughlin (10%), and John Matteson (10%). The same four individuals were listed as owners in Palisades' Dealer Agreement, entered into approximately two years later. In 2001, the ownership interests were transferred to Premier, a holding company, in which each owner had the same percentage interest as for the dealerships. In addition to the two Volkswagen dealerships, Premier also owns Audi, BMW, Jaguar, Land Rover, and Volvo dealerships. Since 2001, Thomas Coughlin has made a number of transfers of ownership shares to members of his family, for estate and gift tax planning purposes. These transfers include: an additional 6% interest to Sean Coughlin, Thomas Coughlin's son; a 2.5% interest to Patricia, Thomas Coughlin's daughter; 16% interest to CIC, LLC; and 3% interest to CICGR, LLC. CIC, LLC is an entity created for the purpose of giving gifts to Thomas Coughlin's children. Similarly, CICGR, LLC is an entity created for the purpose of giving gifts to Thomas Coughlin's grandchildren. Thomas Coughlin controls both CIC, LLC and CICGR, LLC.

Hudson Valley and Palisades informed VWoA of the changes to the ownership structure in December 2012 and January 2013. VWoA requested additional documentation regarding the change in structure, which Plaintiffs provided. Although VWoA consented in principle to the ownership changes, VWoA is also "demanding" that Plaintiffs sign new dealer agreements that contain additional agreements, including corporate guarantees, hold harmless agreements, covenants not to sue, and dealer subordination agreements as a condition to consenting to the ownership changes.

Plaintiffs' Complaint asserts five causes of action. The first three causes of action are brought on behalf of Palisades and seek: (1) injunctive relief on the basis that the VBP violates section 463(2)(g) of the Dealer Act; (2) declaratory relief that the DSI violates Dealer Act

3

Section 462(2)(gg) and permanent injunctive relief preventing VWoA from using that DSI as a benchmark for dealer performance; and (3) damages against VWoA on the basis that the VBP violates section 463(2)(g) of the Dealer Act. The Fourth and Fifth causes of action are brought on behalf of Hudson Valley and Palisades and seek declaratory and permanent injunctive relief that (4) VWoA has unreasonably withheld its consent to the transfer of ownership interests, in violation of section 463(2)(k) of the Dealer Act and (5) VWoA has made unreasonable modifications to the Dealer Agreements, in violation of section 463(2)(ff) of the Dealer Act. Finally, the Sixth cause of action seeks attorneys' fees, costs, and disbursements. Plaintiffs seek leave to amend the Complaint and provided the Court with a Proposed Amended Complaint ("PAC") which asserts additional factual allegations and additional statutory bases for its alleged causes of action.

## II. Legal Standard
### a. Motion to Dismiss

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content

4

pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### b. Motion to Amend

Under Fed. R. Civ. P. 15(a), a party may amend its pleading after a responsive pleading has been served "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). "[T]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court should grant leave to amend the complaint "'[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *In re Alcon Shareholder Litigation*, 719 F. Supp. 2d 280, 281-82 (S.D.N.Y. 2010) (quoting *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "A proposed amendment is futile if the proposed claim could not withstand a 12(b)(6) motion to dismiss." *Fortune v. Grp. Long Term Disability Plan for Emps. of Keyspan Corp.*, 588 F. Supp. 2d 339, 341 (E.D.N.Y. 2008), *aff'd* 391 F. App'x 74, 80 (2d Cir. 2010) (citation omitted).

In deciding Plaintiffs' motion to amend, the Court analyzes the additional facts alleged in the PAC and additional statutory violations asserted under the stated 12(b)(6) motion to dismiss standard where relevant.

### III. Discussion
### a. First and Third Claims: Violation of § 463(2)(g)

Hudson Valley's first and third claims allege a violation of section 463(2)(g) of the Dealer Act, with the first claim seeking declaratory relief and the third claim seeking damages. Hudson Valley alleges that is that it is impossible for it to meet the standards for the VBP due to the fact that consumer preferences in Rockland County disfavor German cars. The PAC adds facts as to the regional market bias that Hudson Valley alleges exists in Rockland County. The additional facts include a report from "Auto Outlook," a trade newsletter of the Greater New York Automobile Dealers Association. The publication indicates that Mercedes, BMW, Volkswagen, Audi, Porsche, and MINI all have lower market shares in Rockland County than in Westchester County.[3] The additional fact that the market shares of German brand vehicles tend to be lower in Rockland County than in Westchester County and all downstate counties is taken into consideration. However, the Court does not accept the conclusory allegation that from this data, the assumption must be that there is an anti-German brand bias in Westchester County.

Defendant argues that it cannot be liable for a violation of section 463(2)(g), even if it did fail to take into account the "unique" characteristics of the preferences of the market in which Plaintiffs operate. Section 463(2)(g) makes it unlawful

> [t]o sell or offer to sell any new motor vehicle to any franchised motor vehicle dealer at a lower actual price therefor than the actual price offered to any other franchised motor vehicle dealer for the same model vehicle similarly equipped or to utilize any device including, but not limited to, sales promotion plans or programs which result in such lesser actual price. . . . This paragraph shall not be construed to prevent the offering of incentive programs or other discounts provided such incentives or discounts are reasonably available to all franchised motor vehicle dealers in this state on a proportionately equal basis.

---

[3] Mercedes has a 4.5 market share in Rockland County and 6.5 in Westchester County; BMW has a 3.9 market share in Rockland and 6.0 in Westchester; Volkswagen has a 2.2 market share in Rockland and 3.2 in Westchester; Audi has a 1.7 market share in Rockland and 3.0 in Westchester; Porsche has a 0.2 market share in Rockland and 0.6 in Westchester; and MINI has a 0.5 market share in Rockland and 0.7 in Westchester. Russell P. McRory Dec. Ex. A.

N.Y. VEH. & TRAF. L. § 463(2)(g).

In the one case to interpret section 463(2)(g) in detail in the context of an incentive program, the Supreme Court of Suffolk County,[4] found that an Audi bonus program violated the statute because the program did not treat all dealers equally. Although not binding, *Audi of Smithtown v. Volkswagen Grp. of Am., Inc.*, 924 N.Y.S.2d 773 (N.Y. Sup. Ct., Suffolk County 2011), is instructive. In *Audi of Smithtown, Inc.*, the franchisor treated new dealerships differently than existing dealerships for the purposes of two incentive programs. The first incentive program, "Keep it Audi," gave discounts in varying amounts to dealers on the purchase of lease-return vehicles (cars being returned to the dealership at the end of the lease term) based upon meeting quarterly purchase objectives. Since new dealers did not have a portfolio of vehicles whose leases were maturing, new dealers were automatically placed in the highest qualifying level for three years, thereby achieving the highest possible discount. The "CPO Purchase Bonus" was a program through which Audi rewarded a dealer by paying them a bonus of a percentage of the MSRP for the sale of new vehicles. To qualify for this program, existing dealers were required to purchase a certain percentage of lease-return vehicles, calculated based on the total number of maturing lease-return vehicles. For the same reason that an exception was made for new dealers for the "Keep it Audi" program, new dealers qualified for the "CPO Purchase Bonus" by meeting a sales objective for the sale of certified pre-owned vehicles, rather than by meeting a purchasing requirement. The court found both programs to violate section 463(2)(g) of the Dealer Act because "[i]n effect, existing dealers are required to purchase most of their pre-owned vehicles at the highest cost if they are to have any opportunity to receive the

---

[4] The decision was affirmed by the Second Department in *Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, 100 A.D.3d 669, 671, 954 N.Y.S.2d 106, 108 (2d Dep't 2012).

benefits of these two incentive programs, while new dealers are free to purchase their pre-owned inventory at lower prices from auction houses and thereby secure the benefits of both programs." *Audi of Smithtown*, 924 N.Y.S.2d at 780; *see also Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, 100 A.D.3d 669, 671, 954 N.Y.S.2d 106, 108 (2d Dep't 2012) ("Audi offered new vehicles to dealers at lower actual prices than it offered similar vehicles to dealers not qualifying for the program."). Therefore, the court found, the franchisor did not apply the incentive programs on a "proportionately equal basis" and the Keep it Audi and CPO Bonus Program did not qualify for the safe harbor provision of section 463(2)(g).

VWoA asserts that *Audi of Smithtown* supports dismissal of this claim because that court found that when a franchisor created an exception for certain dealers respective to incentive and bonus programs, that different treatment did not fall into the "proportionately equal basis" language of the safe harbor provision of section 463(2)(g). Plaintiffs assert that *Audi of Smithtown* supports their position because the effect of the VBP is that Lash, Hudson Valley's nearest competitor, consistently earns the New Vehicle Sales Bonus, allowing it to purchase new vehicles at a lower price, which is the same outcome that the court in *Audi of Smithtown* found to violate section 463(2)(g). Although the circumstances here are not entirely analogous to those in *Audi of Smithtown*, the Court agrees with Defendant. The franchisor in *Audi of Smithtown* treated two categories of dealerships differently for purposes of the incentive and bonus programs, which was the reason the programs failed under the Dealer Act.

Here, all dealers are treated equally. Plaintiffs do not argue that the VBP is inequitable on its face, but rather, factors outside its control cause the VBP to be inequitable in practice. The safe harbor of the statute is only violated where the bonus program is applied on a disproportionate basis, which is not the case here. *C.f. Audi of Smithtown*, 924 N.Y.S.2d at 780

("There is no manner in which the bonus offered on new automobiles sales under the CPO program to new automobile dealers is proportionately similar to the bonus offered existing dealers."). VWoA's bonus program is offered on a proportionately similar basis to all franchisors.

Even with the additional facts alleged in the amended complaint, the claim fails. The safe harbor provision of section 463(2)(g) protects bonus programs so long as they are "reasonably available" to all dealers "on a proportionately equal basis." If the Court found that consumer preferences were required to be taken into consideration in order for the bonus program to be applied on a proportionately equal basis, that would defeat the objective standard that the safe harbor creates. Additionally, consumer preference is a variable that is apt to change over time and difficult to quantify. The statute clearly states that any price discounts that are made available to dealers through incentive programs must be "proportionately equal" and it is difficult to imagine how a franchisor would be expected to apply such programs taking consumer preferences into account. Whereas segments of vehicles are easily quantifiable through vehicle registrations, consumer preferences are not a stable benchmark.

The same conclusion was reached by Judge Hellerstein in a bench ruling in the case *Beck Chevrolet Co. v. General Motors, LLC*. Transcript of Proceedings re: TRIAL held on 9/24/2013 before Judge Alvin K. Hellerstein, Beck Chevrolet Co., Inc. v. General Motors, LLC, 11-cv-02856 (S.D.N.Y. 2013), ECF No. 124 ("*Beck* 9/24/2013 Transcript"). In that case, General Motors used a Retail Sales Index ("RSI") to evaluate dealers' sales performance, which was calculated by taking the average market share of a dealer's sales area, taking into consideration the segments in which the franchisor sells vehicles. Plaintiff challenged the use of the a state-wide basis for calculating the RSI because it failed to consider the popularity of imports,

concentration of population, and other factors that exist in the downstate markets. Notably, Judge Hellerstein ruled, "A standard to be a standard must be objective. It cannot give rise to unique arguments of exceptions if the standard is to be generally applicable and not arbitrary as to particular dealers." *Id*. at 17.

The Court also finds persuasive Defendant's analogy to price discrimination claims under the Robinson-Patman Act.[5] The Robinson-Patman Act states, "It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality . . . " 15 U.S.C. § 13(a). Under the judicially-created doctrine of "functional availability," "[t]he practice of conditioning price concessions and allowances upon the customer's purchase of a specific quantity of goods will not give rise to a Robinson–Patman violation if the concessions are available equally and functionally to all customers." *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1326 (6th Cir. 1983). There is similarity between the functional availability doctrine and the safe harbor provision of the Dealer Act because both allow for exceptions to anti-price discrimination statutes where discounts are given on a "proportionately equal" or "functionally available" basis. In one case interpreting the functional availability doctrine, the Sixth Circuit held that "an outside influence, not in the control of [defendant distributor], i.e. plaintiffs' customer demands, . . . does not render the discount functionally unavailable." *Smith-Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007). Similarly here, the alleged consumer preferences are outside the

---

[5] Plaintiffs argue that these cases are not relevant because the Robinson–Patman Act is concerned with protecting competition and the Dealer Act is concerned with protecting competitors, namely dealers, and therefore there is no element of injury to competition in a Dealer Act price discrimination claim. This is irrelevant, however, because the Court is only addressing the Robinson-Patman Act with respect to the single element of price discrimination.

10

control of the franchisor and not taking this factor into consideration does not mean that the VBP was applied disproportionately.

The cases that Plaintiff cites addressing regional market share are inapposite because none of those cases dealt with incentive programs. In each case[6] the relevant court was faced with the termination or transfer of a dealer. Further, none of the cited cases dealt specifically with the New York Dealers Act. Finally, none of the cited cases are controlling and to the extent that they are contrary to this Court's decision, the Court disagrees with those courts.

Finally, Plaintiffs also allege that its nearest competitor, Lash Auto, located in Westchester County, occupies an artificially small PAI, because it borders an "open point." An open point, Plaintiff explains, occurs when a certain area is not assigned to any dealer because a previous dealer went out of business and the area was not reassigned. Being adjacent to an "open point" is an alleged unfair advantage because a dealer has the ability to sell into this area without it being taken into account in the dealer's PAI, therefore giving it a small sales objective but a large market into which it is able to sell. This is of no matter here because as the Court has stated, this does not indicate that VBP was applied disproportionately.

As indicated above, the additional allegations made in the PAC with respect to this claim also fail to state a claim under a 12(b)(6) motion to dismiss standard. Therefore, any amendment

---

[6] Plaintiffs cite *Sims v. Nissan North Am., Inc.*, Nos. 12AP–833, 12AP–835, 2013 WL 3270914 (Ohio Ct. of App. June 25, 2013) (with respect to termination of a dealership, court affirmed the Ohio Motor Vehicle Dealers Board's determination that specific dealer agreement required Nissan to take into consideration "any special local market conditions"), *Marquis v. Chrysler Corp.*, 577 F.2d 624, 632 (9th Cir. 1978) (the failure to meet the Minimum Sales Responsibility, calculated as a percentage of new Dodge registrations to the total number of new cars during a certain period as the only factor in deciding to terminate a dealership violated the California Dealers Act under the specific facts "where the dealership operated at sub-MSR levels for a considerable period, during which the sales requirement consistently was treated as a goal, and where there is evidence that termination was motivated by other reasons, the dealers failure to satisfy MSR does not by itself establish that sales performance was so poor that termination could not violate the Act."), and *Ford Motor Co. v. Claremont Acquisition Corp.*, 186 B.R. 977, 989 (C.D. Cal. 1995) (district court held that "[i]t was not an impermissible weighing of the evidence for the bankruptcy court to reject Ford's reliance on a regional average comparison as the sole measure of sales performance."), among others.

to the first cause of action would be futile. Defendant's motion to dismiss is granted and Plaintiffs' motion to amend is denied with respect to the first cause of action.

### b. Second Claim: DSI (Violation of § 463(2)(gg))

The second claim of the Complaint and PAC is that the DSI violates section 463(2)(gg) of the Dealer Act, which makes it illegal for a franchisor "[t]o use an unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement." N.Y. VEH. & TRAF. L. § 463(2)(gg). Hudson Valley points to the fact that the DSI takes into account segments, or different categories of vehicles, in calculating the DSI, but not consumer preferences. Since Volkswagen does not manufacture pick-up trucks, for example, the number of newly registered pick-up trucks is omitted when the DSI is calculated. Hudson Valley also points to the fact that if small SUVs are less popular in a particular PAI, that is reflected in the DSI. Because the DSI adjusts for segments and not consumer preferences, Hudson Valley argues that "[VWoA]'s rigid adherence to regional market share, adjusted only for segment popularity and no other local consumer preferences, is the fundamental flaw with DSI and constitutes a violation of section 463(2)(gg) of the Dealer Act." Pls.' Opp. Br. 9.

Defendant argues that there is no case or controversy with regard to this issue, and that therefore, the claim should be dismissed for lack of jurisdiction. Hudson Valley alleges that it is "threatened with [the] irreparable harm" of falling out of compliance with the DSI requirements, and seeks declaratory relief that the DSI violates section 463(2)(gg). The New York Traffic and Vehicle Law provides that "[a] franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to . . . sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties." N.Y. VEH. & TRAF. L. § 469(1). In *Beck v. Chevrolet*, Judge Hellerstein rejected the argument that there was no case or controversy

12

in similar circumstances. TRANSCRIPT of Proceedings re: CONFERNCE held on 7/11/2012 before Judge Alvin K. Hellerstein at 79-80, Beck Chevrolet Co., Inc. v. General Motors, LLC, 11-cv-02856 (S.D.N.Y. 2012), ECF No. 75 ("So the statute says that a franchisee like Beck, who is or may be aggrieved by a violation, which he alleges in six and seven, shall be entitled to have injunctive relief against the violation. It doesn't seem to require irreparable damage. He shows prima facie a violation. It's clear that he has to spend more money and make more sales because of the alleged violation. So he may be aggrieved. He may suffer damages. That's aggrieved. You don't have to show irreparable damage in a final injunction, only in a temporary injunction."); *Beck* 9/24/2013 Transcript at 4 ("Beck feels aggrieved by being measured for its compliance with indices based on statewide jurisdiction, by statewide sales calculations and averaging, and brings its lawsuit under that section of the law. Hence, there is a real case and controversy, I so hold, and I deny Beck's arguments with respect to these threshold matters.")

Similarly here, the threat of falling out of compliance with the DSI, which could result in the termination of the Dealer Agreement is enough of an injury to sustain jurisdiction. Plaintiffs claim that "Palisades has been unable to attain a DSI that meets the requirements of the franchise agreement." Compl. ¶ 32; PAC ¶ 34. Thus, there is a case or controversy and the Court has jurisdiction over the claim at this time. *See Bronx Auto Mall, Inc. v. Am. Honda Motor Co., Inc.*, 934 F. Supp. 596, 612 (S.D.N.Y. 1996) ("The statute thus appears to reflect a legislative determination that a franchised dealer threatened with non-renewal does not have adequate legal remedies and is faced with the risk of irreparable injury.").

Defendant also argues that the allegations under this claim fail to state a claim because of the same reasons stated against the first and third claims. However, at this stage of the proceedings, the Complaint plausibly states a claim under section 463(2)(gg) of the Dealer Act.

Based on the allegations in the complaint, it is plausibly stated that the DSI is "unreasonable, arbitrary or unfair." Although Judge Hellerstein ultimately found that "[a]ssignment of a market potential in the course of honest business judgment by a manufacturer to a dealer as a measure of expected performance within an area is not inherently unfair or arbitrary[,]" there were distinctions in *Beck* which preclude this Court from dismissing the claim here on a motion to dismiss.[7] *Beck* 9/24/2013 Transcript at 30. Therefore, Defendant's motion to dismiss this claim is denied and the Court will allow this claim to proceed. *See also JDN VW, LLC v. Volkswagen of America, Inc.*, Docket No. C-000026-13 (N.J. Super. Ct. Sussex County Feb. 4, 2014) (court held that at the motion to dismiss stage, allegations that Volkswagen's VBP violated the New Jersey Dealer Act were adequately pled).

### c. Fourth Claim: Dealer Ownership Transfers (Dealer Act sections 463(2)(k), 466(1), 463(2)(ff), and 463(2)(j))

Plaintiff alleges a violation of the Dealer Act Section 463(2)(k), which makes it unlawful for a franchisor to "unreasonably withhold consent to the sale or transfer of an interest, in whole or in part, to any other person or party by any franchised motor vehicle dealer or any partner or stockholder of any franchised motor vehicle dealer." N.Y. VEH. & TRAF. L. § 463(2)(k).

Defendants base their motion to dismiss the fourth claim on the fact that Plaintiffs never sought and obtained prior written consent for the ownership changes. The Complaint states that the transfer of ownership shares took place over a period of approximately ten years and were made for gift and estate tax purposes. According to the Complaint, it was not until after the

---

[7] For example, the parties in *Beck* signed a Participation Agreement which supplemented its dealer agreement following GM's bankruptcy.

14

ownership changes were made that Palisades and Hudson Valley notified Volkswagen of the changes. Compl. ¶ 41; PAC ¶ 44.

Because Plaintiffs did not seek approval of the changes to the ownership structure before they were carried out, Defendant could not have unreasonably withheld consent. The language of the statute implies that in order to violate this section, a request for approval must have been made before the changes were implemented. Indeed, there was no request made to which Defendant could have given consent. Instead, there was a request for an ex post approval of changes that had already been implemented. Under these set of facts, Defendants could not have violated section 463(2)(k). *See H-D Michigan, LLC v. Sovie's Cycle Shop, Inc.*, 626 F. Supp. 2d 274, 279 (N.D.N.Y. 2009) ("Because Sovie's never submitted a written request, together with supporting documentation, HDMC did not violate § 463(2)(k). HDMC cannot be said to have unreasonably withheld consent where it never received a proper request to transfer the franchise."). In addition, VWoA did not withhold consent. Plaintiffs' complaint states that VWoA did consent to the transfer of ownership interests, but rather conditioned that consent on Plaintiffs performing certain actions, namely signing corporate guarantees, hold harmless agreements, dealer subordination agreements, and covenants not to sue.

Plaintiffs' PAC adds a violation of Section 466(1) of the Dealer Act, entitled "Unreasonable Restrictions." Section 466(1) states,

> It shall be unlawful for a franchisor directly or indirectly to impose unreasonable restrictions on the franchised motor vehicle dealer relative to transfer, sale, right to renew or termination of a franchise, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights with respect to its franchise or dealership.

N.Y. VEH. & TRAF. L. § 466(1). Defendants argue that the claim also fails under this section because there was no pre-change request to implement the ownership changes.

By the language of the statute, the New York Legislature prohibits a franchisor from "directly or indirectly impos[ing] unreasonable restrictions on the franchised motor vehicle dealer relative to transfer . . . of a franchise." Plaintiffs adequately allege a claim under section 466 of the Dealer Act by claiming that the requirements VWoA imposed on Plaintiffs relative to the transfer of interests were unreasonable and burdensome. Plaintiffs are permitted to amend their Complaint to allege a violation of section 466(1). Although VWoA argues that Plaintiffs did not seek consent, this section does not refer to a franchisor "withholding" consent and therefore does not imply that prior notice is a prerequisite to a violation of this section.

Plaintiffs also seek to add a claim under section 463(2)(j) of the Dealer Act. Section 463(2)(j) makes it unlawful for a franchisor

> [t]o prevent or attempt to prevent, by contract or otherwise, any franchised motor vehicle dealer from changing the capital structure of its dealership, or the means by or through which it finances the operation of its dealership, or finances the acquisition or retention of inventory, provided the dealer at all times meets any capital standards agreed to between the dealer and the franchisor and as applied by the franchisor to all other comparable franchised motor vehicle dealers of the franchisor located within the state.

N.Y. VEH. & TRAF. L. § 463(2)(j). The facts in the Complaint plausibly state a claim under this section and thus, at this stage of the proceedings, Plaintiffs will be allowed to amend the Complaint to add a violation of section 463(2)(j) of the Dealer Act. *See Smith Cairns Subaru v. Subaru Distributor Corp.*, 41 Misc.3d 1222(A), 981 N.Y.S.2d 638 (N.Y. Sup. Westchester County 2013) (plaintiff adequately alleged a violation of section 463(2)(j) where it claimed that defendant attempted to prevent it from changing the capital structure of its business, specifically with regard to the transfer of rights under the dealer agreement from one entity to another with defendant's knowledge).

Plaintiffs' PAC consolidates what was the fifth cause of action in the Complaint into the fourth cause of action. The Fifth cause of action in the Complaint alleges that under section 463(2)(ff) of the Dealer Act, it is unreasonable for Volkswagen to condition the acceptance of ownership changes on Palisades and Hudson Valley signing corporate guarantees, hold harmless agreements, dealer subordination agreements, and covenants not to sue. This includes signing a new dealer agreement that makes Thomas Coughlin's children and grandchildren "Members of Dealer's Owner." Section 463(2)(ff) makes it illegal for a franchisor "[t]o modify the franchise of any franchised motor vehicle dealer unless the franchisor notifies the franchised motor vehicle dealer, in writing, of its intention to modify the franchise of such dealer at least ninety days before the effective date thereof, stating the specific grounds for such modification." N.Y. VEH. & TRAF. L. § 463(2)(ff)(1). The Court agrees with VWoA's assertion that the language of this section only prohibits the unilateral modification of a franchise agreement without notice. Here, Plaintiffs were informed that VWoA intended to modify the agreement because doing so required Palisades and Hudson Valley to sign certain addendums to the Franchise Agreement. Therefore, Plaintiffs do not state a plausible claim under this section of the Dealer Act.

## IV.     Fifth Claim: Attorneys' Fees, Costs, and Expenses

VWoA seeks dismissal of the claim seeking attorneys' fees, costs, and expenses because it argues that each of the preceding causes of action should be dismissed. Because claims remain, under section 469(1) of the Dealer Act, Plaintiffs have a right to seek attorneys' fees, costs, and disbursements. Thus, this portion of the motion to dismiss is denied.

## V. Conclusion

Accordingly, Defendant's motion to dismiss is granted in part and denied in part and Plaintiffs' motion to amend the Complaint is granted and part and denied in part. Plaintiffs are given fourteen (14) days to file an Amended Complaint in accordance with this decision. Defendant will then have twenty-one (21) days from the filing of the Amended Complaint to file an Answer to the Amended Complaint.

The Clerk of the Court is respectfully requested to terminate the motions, Docket Nos. 31 and 34.

Dated: June 6, 2014
White Plains, New York

SO ORDERED:

_____ 6/5/14
NELSON S. ROMÁN
United States District Judge