UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                            :
CMS VOLKSWAGEN HOLDINGS, LLC, and          :
HUDSON VALLEY VOLKSWAGEN, LLC              :
                                                            :
                                  Plaintiffs,     :         13-cv-03929 (NSR)
        -against-                                 :         OPINION & ORDER
                                                            :
VOLKSWAGEN GROUP OF AMERICA, INC.,        :
and LASH AUTO GROUP, LLC,                        :
                                                            :
                                  Defendant.      :
------------------------------------------------------------- X

NELSON S. ROMÁN, United States District Judge

        Defendant moves for reconsideration and reargument of this Court's Opinion and Order

of June 6, 2014 (ECF No. 39), which granted in part and denied in part Defendant Volkswagen

Group of America, Inc.'s ("Defendant" or "VWoA") motion to dismiss and Plaintiffs'

cross-motion for leave to amend (the "June Order"). Familiarity with the June Order is assumed.

For the following reasons, the motion for reconsideration and reargument is DENIED.

## STANDARD ON A MOTION FOR RECONSIDERATION AND REARGUMENT

        Motions for reconsideration and/or reargument are governed by Local Civil Rule 6.3 and

Fed. R. Civ. P. 60(b). The standard is strict. *Targum v. Citrin Cooperman & Co.*, No. 12 Civ.

6909 (SAS), 2013 WL 6188339, at *1 (S.D.N.Y. Nov. 25, 2013). Reconsideration "is an

extraordinary remedy to be employed sparingly in the interests of finality and conservation of

scarce judicial resources." *Allen v. Antal,* No. 12-cv-8024, 2014 WL 2526913 (S.D.N.Y. June 3,

2014). "[R]econsideration will generally be denied unless the moving party can point to

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10 | 3 | 2014

controlling decisions[1] or data that the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *In re Optimal U.S. Litig.*, 886 F. Supp. 2d 298, 311-12 (S.D.N.Y. 2012) (internal quotation marks omitted); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 39, 52 (2d Cir. 2012). Alternatively, a court may grant a motion for reconsideration to "correct a clear error or prevent manifest injustice." *Optimal*, 886 F. Supp. 2d at 312 (internal quotation marks omitted). But motions for reconsideration are not "vehicle[s] . . . for presenting the case under new theories . . . or otherwise taking a second bite at the apple." *Allen*, 2014 WL 2526913, at *2. Rather, "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *Sys. Mgmt. Arts Inc. v. Avesta Techs, Inc.*, 106 F. Supp. 2d 509, 521 (S.D.N.Y. 2000). "New arguments which could have been raised previously may not be raised on a motion for reconsideration." *Thypin Steel Co. v. Certain Bills of Lading*, No. 96-2166 (RPP), 1999 WL 108728, at *1 (S.D.N.Y. Mar. 3, 1999).

## DISCUSSION

Plaintiffs seek reconsideration and reargument on all of the claims that the June Order dismissed: (1) Plaintiff CMS Volkswagen Holdings, LLC d/b/a Palisades Volkswagen's ("Palisades") claim under section 463(2)(g) of the New York Franchised Motor Vehicle Dealer Act ("Dealer Act"), N.Y. Veh. & Traf. Law § 460 *et seq.* (the "Subdivision (g) Claim"), (2) both Plaintiffs' claims under Dealer Act § 463(2)(ff) (the "Subdivision (ff) Claims"), and (3) both Plaintiffs' claims under Dealer Act § 463(2)(k) (the "Subdivision (k) Claims").

---

[1]        "Controlling decisions include decisions from [the United States Supreme Court and] the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." *Heffernan v. Straub*, 655 F. Supp. 2d 378, 380-81 (S.D.N.Y. 2009).

I.   **Reconsideration and Reargument Are Denied as to the Dismissal of the Subdivision (g) Claim**

    A.   The Subdivision (g) Claim

The Subdivision (g) Claim concerns the legality of VWoA's "Variable Bonus Program." The central issue is whether the Variable Bonus Program falls within the "safe harbor" of Dealer Act § 463(2)(g), which permits only those incentives or discounts that "are reasonably available to all franchised motor vehicle dealers in this state on a *proportionately equal basis*." *Id.* (emphasis added). The Variable Bonus Program is an incentive program that pays bonuses to Volkswagen dealers that meet certain sales objectives. (Compl. ¶ 28, ECF No. 22-1.) Those sales objectives are set by a formula—one formula that applies the same variables and constants to all dealers. Palisades has two theories for its claim that the Variable Bonus Program is unlawful. (*See* Pls.' Mem. Law Supp. Mot. Recons. Rearg. at 2, ECF No. 42 [hereinafter "Pls.' Br."].)

Palisades' first theory is that the Variable Bonus Program is unlawful because it uses "regional segment-adjusted market share" as one of the variables in the formula to set sales objectives. (*Id.*) Palisades alleges that by using a market share variable that is measured at the regional level, the Variable Bonus Program does not adequately account for local variations in consumer preferences, making it harder for some dealers to meet sales objectives (and reap the benefits of the Variable Bonus Program) than other dealers in the same region. (*Id.*) For example, according to Palisades, dealers in Westchester and Rockland Counties are subject to the same regional segment-adjusted market share under the Variable Basis Program because they are both in the downstate New York region. (*Id.* at 3-4.) However, it is allegedly easier for dealers in Westchester to meet sales objectives than dealers in Rockland because consumer preferences

3

are more favorable to German and European cars (such as Volkswagen) in Westchester than in Rockland. (*Id.* at 3-4.)

Palisades next complains that the Variable Bonus Program permits another type of allegedly unfair advantage to go unchecked.  The Variable Bonus Program's sales objectives depend not only on regional segment-adjusted market share, but also on the size of a dealer's assigned territory.  (*Id.* at 3.)  But although sales objectives are set by reference only to the *assigned* territory, dealers can sell vehicles to customers in territories that have no assigned dealer ("open points") in addition to customers in their own assigned territory.  As a result, dealers located near open points have an easier time meeting sales objectives than dealers located far from any open points.  (*Id.* at 12.)  Plaintiffs argue that this imbalance takes the Variable Bonus Program out of the safe harbor.

The June Order found that the Variable Bonus Program met the safe harbor as a matter of law and dismissed the Subdivision (g) Claim.

> B.     Plaintiffs' Arguments Concerning Palisades' Dismissed Subdivision (g) Claim are Unavailing

Most of Plaintiffs' present arguments concerning the Subdivision (g) Claim were raised, fully considered, and disposed of in connection with the motion to dismiss and cross-motion to amend.  "[A] motion for reconsideration is not an opportunity to press more strenuously the same arguments made in the original motion."  *Am. Home Assurance Co. v. Crowley Ambassador*, 01-CIV-3605 PKL, 2003 WL 21313972, at *3 (S.D.N.Y. June 6, 2003).

For example, Plaintiffs argue again that the Court should credit Plaintiffs' conclusory allegation of an anti-German-brand consumer preference in Rockland County.  (*See* Pls.' Br. at 4.)  This argument was fully considered on the motion to dismiss, *see* June Order at 6, and cannot possibly result in "clear error," because the Court concluded that it would dismiss the

Subdivision (g) Claim even if it were to credit the allegation, *see id.* at 8-10 (finding that even if

consumer preferences were at play, "[i]f the Court found that consumer preferences were

required to be taken into consideration in order for the bonus program to be applied on a

proportionately equal basis, that would defeat the objective standard that the safe harbor

creates").

     Next, Plaintiff takes issue with the Court's conclusion that requiring consumer

preferences to be taken into account would defeat the safe harbor's objective standard.  (*See* Pls.'

Br. at 5.)  Again, the import of consumer preferences was a central issue on the motion to

dismiss, and this conclusion was not "clear error."  As explained in the June Order, *see* June

Order at 9-10, Judge Hellerstein likewise rejected the analogous argument that use of a

state-wide sales benchmark was unreasonable because it failed to account for local consumer

preferences, Transcript of Trial Held on 9/24/2013 Before Judge Alvin K. Hellerstein at 17, *Beck*

*Chevrolet Co., v. Gen. Motors, LLC*, 11-cv-02856 (S.D.N.Y.), ECF No. 124, and the Sixth

Circuit likewise held that "outside influences" such as "customer demands" did not render a

discount unlawful under an analogous standard, *see Smith Wholesale Co. v. R.J. Reynolds*

*Tobacco Co.*, 477 F.3d 854, 877 (6th Cir. 2007).  And while Plaintiffs now argue that consumer

preferences are objective because they are "readily ascertainable from registration data,"

Plaintiffs' very next sentence belies that assertion:  "The existence, and impact, of consumer

preferences on automobile sales in a given market are *almost always some of the most hotly*

*contested issues in any automobile franchise litigation*."  (Pls.' Br. at 6 (emphasis added).)  "A

standard to be a standard must be objective.  It cannot give rise to unique arguments of

exceptions if the standard is to be generally applicable and not arbitrary as to particular dealers."

Transcript of Trial Held on 9/24/2013 Before Judge Alvin K. Hellerstein, *supra*, at 17.

Plaintiffs' duplicative arguments on the import of consumer preferences amount to no more than "disagreement between an understandably disappointed litigant and the Court." *Aquillo v. Police Benevolent Ass'n of N.Y. State Troopers, Inc.*, No. 91 Civ. 325, 1994 WL 494639, at *4 (N.D.N.Y. Aug. 15, 1994).

Plaintiffs' new arguments are similarly unavailing.  In construing the "proportionately equal basis" standard in the June Order, the Court turned for guidance to the analogous "functional availability" doctrine under federal anti-price discrimination law.  *See* June Order at 10-11.  Plaintiffs argue that the Court overlooked 16 C.F.R. § 240.10(a)(1) when interpreting the "functional availability" jurisprudence.  (Pls.' Br. at 7.)  That provision begins with the heading "functional availability" and states that sellers should take "reasonable steps to ensure that services and facilities are useable in a practical sense by all competing customers," including by "offering alternative terms and conditions" so long as those alternatives are "proportionally equal."  16 C.F.R. § 240.10(a)(1).  Plaintiffs argue that this provision contemplates that sellers should offer "alternate means of earning price discounts, not one-size-fits-all."  (Pls.' Br. at 7.) Defendant responds that this provision is not on point because it governs functional availability of facilities and services, not incentives or discounts.  (Def.'s Opp. Pls.' Mot. Recons. Rearg. at 8-9, ECF No. 43.)

The Court need not decide whether 16 C.F.R. § 240.10(a)(1) applies to incentives or discounts.  Even were the Court to assume it applies, reconsideration would not be warranted because the Sixth Circuit's application of the functional availability doctrine in *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854 (6th Cir. 2007), is far more instructive than the bare language of 16 C.F.R. § 240.10(a)(1) (which the Court notes does not contradict *Smith Wholesale*).  As the Court discussed at length in the June Order, *Smith Wholesale* concluded that

6

an incentive program was functionally available to all wholesalers reasoning that the defendant "evenhandedly applied the [incentive program], treating all of its wholesalers equally and offering all of them the same qualification terms."[2]  477 F.3d at 877.  VWoA likewise evenhandedly applied the Variable Bonus Program, offering all dealers the same qualification terms.  Nothing in the complaint alleges otherwise.

Plaintiffs also argue that the June Order is internally inconsistent because it dismissed the Subdivision (g) Claim but did not dismiss Palisades' challenge to "Dealer Sales Index," the metric that VWoA used to evaluate dealers' sales performance under the dealer agreement.  (*See* Pls.' Br. at 11.)  Plaintiffs argue that because Palisades challenges both the Variable Bonus Program and Dealer Sales Index on the same basis—that they use regional segment-adjusted market share—the claims must stand or fall together.  (*Id.*)  The Court disagrees.  Palisades attacks Dealer Sales Index under a different statutory provision—Dealer Act § 463(2)(gg)— which establishes a different standard than subdivision (g)'s "proportionately equal basis" standard.  (*See* Compl. ¶ 7.)  Indeed, subdivision (gg) prohibits franchisors from evaluating a dealer's compliance with a franchise agreement using a performance metric that is "unreasonable, arbitrary or unfair."  Dealer Act § 463(2)(gg).  A metric that meets the "proportionately equal basis" standard may nonetheless be "unreasonable, arbitrary or unfair" in other ways.  The Court, therefore, did not commit "clear error" by dismissing the Subdivision (g) Claim while permitting the claim under subdivision (gg) to proceed.

---

[2]     Plaintiffs' efforts to reargue the import of *Smith Wholesale*, (*see* Pls.' Br. at 7-10) a decision that featured prominently in Defendants' opening submission on its motion to dismiss (*see* VWoA's Mem. Law Supp. Mot. Dismiss 15-16), likewise must fail because the arguments were previously raised and Plaintiffs have not shown that the Court's interpretation resulted in "clear error."

Likewise, Plaintiff attempts to reargue the import of *Audi of Smithtown Inc. v. Volkswagen Group of America, Inc.*, 100 A.D.3d 669 (2d Dep't 2012).  (*See* Pls.' Br. at 12-14.)  *Audi of Smithtown* was central to the motion to dismiss briefings and was fully considered in rendering the June Order.  Indeed, Plaintiffs' repeated assertions about *Audi of Smithtown* still miss the mark because Plaintiffs ignore the fact that the program in *Audi of Smithtown* applied different qualification terms to categories of dealers.  *See* June Order at 8.  Not so here, where the Variable Bonus Program applies the same terms to all dealers.  *See id.*

**II.    Reconsideration and Reargument Are Denied as to the Dismissal of the Subdivision (k) and Subdivision (ff) Claims**

  A.    The Subdivision (k) and Subdivision (ff) Claims

Plaintiffs allege that between 2001 and 2012, Plaintiffs each underwent a number of tax- and estate-planning transactions that changed their ownership structure.  (Compl. ¶¶ 37-40.) Plaintiffs notified VWoA of these changes in December 2012 and January 2013.  (*Id.* ¶ 41.) VWoA requested more information, and ultimately notified Plaintiffs that it would consent to the ownership changes provided that Plaintiffs and related entities signed certain additional agreements.  (*Id.* ¶¶ 41-42.)  Plaintiffs claim that this amounts to a violation of Dealer Act § 463(2)(k) (*see id.* ¶ 67), which makes it unlawful to "unreasonably withhold consent to the sale or transfer of an interest, in whole or in part, to any other person or party by any franchised motor vehicle dealer or any partner or stockholder of any franchised motor vehicle dealer," Dealer Act § 463(2)(k).  Plaintiffs also attempt to frame this as a violation of Dealer Act § 463(2)(ff) (*see* Compl. ¶ 67), which Plaintiffs contend outlaws "unfair" modifications to franchise agreements (*see* Pls.' Br. at 15).

  B.    Plaintiffs' Arguments Concerning Their Dismissed Subdivision (k) Claims are Unavailing

The June Order dismissed Plaintiffs' Subdivision (k) Claims on two grounds:  (1) that the framework of Dealer Act § 263(2)(k) implies that a request for consent to ownership transfers must be made before the dealer implements a transfer, which did not occur here; and (2) that VWoA did not withhold consent to the transfer, but rather conditioned its consent on the Plaintiffs signing certain documents.  *See* June Order at 15.

As to the first ground for dismissal, Plaintiffs simply argue that "[t]he statute does not impose an express requirement that requests for consent must be made before the transfers are completed."  (Pls.' Br. at 19.)  But this argument is a red herring because the Court did not hold

that there was an express requirement; rather, the Court inferred that requirement from the structure and language of Dealer Act § 463(2)(k).  *See* June Order at 15.  Plaintiffs do not attempt to explain why that inference should be reconsidered.[3]

And Plaintiffs' arguments as to the second ground for dismissal (*see* Pls.' Br. at 17) do not warrant reconsideration because (1) they were raised, fully considered, and disposed of in the June Order, *see* June Order at 16, and (2) the first ground alone justifies dismissal of the Subdivision (k) Claims.

C.       Plaintiffs' Argument Concerning Their Dismissed Subdivision (ff) Claims is Unavailing

The Court dismissed the Subdivision (ff) Claims reasoning that Dealer Act § 263(2)(ff) prohibits only unilateral modifications to franchise agreements that are made without 90 days' written notice; it does not prohibit VWoA from seeking to negotiate the terms of its consent to Plaintiffs' ownership changes.  *See* June Order at 17.

Plaintiffs' only argument for reconsideration is that "[i]t appears the Court overlooked" subdivision (3) of Dealer Act § 263(2)(ff).  (Pls.' Br. at 15.)  Plaintiffs contend that subdivision (3) makes "unfair" franchise modifications unlawful, regardless of whether those modifications are bargained for or imposed unilaterally.  (*Id.*)

But subdivision (3) does not warrant reconsideration because Plaintiffs' interpretation, based on its selective quotation of subdivision (3), does not withstand scrutiny.  In the June Order, the Court concluded that the plain language of Dealer Act § 263(2)(ff)(1) prohibits only modifications that are imposed unilaterally without 90 days' notice.  Dealer Act § 263(2)(ff)(1) (making it unlawful to "modify the franchise of any franchised motor vehicle dealer unless the franchisor notifies the franchised motor vehicle dealer, in writing, of its intention to modify the

_____

[3] The Court also disagrees with Plaintiffs' attempt to distinguish *H-D Mich., LLC v. Sovie's Cycle Shop, Inc.*, 626 F. Supp. 2d 274 (N.D.N.Y. 2009).  (Pls.' Br. at 17.)

franchise of such dealer at least ninety days before the effective date thereof"); June Order at 17.

Subdivision (3) in turn provides:

> If any franchised motor vehicle dealer who receives a written notice of modification
> institutes an action within one hundred twenty days of receipt of such notice . . . to have a
> review of the threatened modification, such action shall serve to stay, without bond, the
> proposed modification until a final judgment has been rendered in an adjudicatory
> proceeding or action . . . . A modification is deemed unfair if it is not undertaken in good
> faith; is not undertaken for good cause; or would adversely and substantially alter the
> rights, obligations, investment or return on investment of the franchised motor vehicle
> dealer under an existing franchise agreement. In any action brought by the dealer, the
> franchisor shall have the burden of proving that such modification is fair and not
> prohibited.

Dealer Act § 263(2)(ff)(3).  Read properly in the context of subdivision (1), subdivision (3)

merely establishes a procedural mechanism for a franchisee, once it is notified that a franchisor

intends to unilaterally modify a franchise, to have that modification reviewed for fairness.

Subdivision (3) cannot, despite Plaintiffs' contentions, outlaw bargained-for franchise

modifications that are "unfair."  "Unfair" is defined to encompass, *inter alia*, modifications that

"adversely and substantially alter the rights, obligations, investment or return on investment of

the franchised motor vehicle dealer under an existing franchise agreement."  *Id.*  Under

Plaintiff's reading, no franchisor could ever negotiate substantial changes to a franchise, even in

exchange for adequate consideration and with the franchisee's genuine agreement.  This absurd

result runs counter to plain logic and the basic tenets of contract law.

Plaintiffs have not alleged a unilateral modification, despite their eleventh-hour attempt

in their submissions on the instant motion to disguise VWoA's actions as such.  Rather, the

complaint makes clear that VWoA sought to bargain with Plaintiffs over the terms of VWoA's

consent to Plaintiffs' prior changes in ownership.  (Compl. ¶ 67 ("Volkswagen Group is

unreasonably withholding its consent to the transfer of Palisades and Hudson Valley to Premier

and other intra-family interest transfers by conditioning its consent on unreasonable

modifications to those franchises . . . ."); *id.* ¶ 73 (same); *see also id.* ¶¶ 42, 46.)  Mere

bargaining does not violate the plain language of Dealer Act § 263(2)(ff)(1)-(3).

## CONCLUSION

The Court DENIES Plaintiffs' motion for reconsideration and reargument.  In accordance

with the June 17, 2014 Scheduling Order (ECF No. 40), Plaintiffs shall file an Amended

Complaint within fourteen (14) days of the date of this Opinion and Order.  Defendants shall

have twenty-one (21) days from the filing of the Amended Complaint to file their Answer.  The

Court respectfully directs the Clerk of Court to terminate the motion at ECF No. 41 and amend

the caption of this case to reflect the voluntary dismissal of Lash Auto Group, LLC as a

Defendant in accordance with ECF Nos. 14-15.

Dated:    October 3, 2014                         SO ORDERED:
          White Plains, New York

                                                  NELSON S. ROMÁN
                                                  United States District Judge