UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CMS VOLKSWAGEN HOLDINGS, LLC and HUDSON VALLEY VOLKSWAGEN, LLC<br><br>Plaintiffs,<br><br>-against-<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>Defendant. | Case No. 13-cv-3929 (NSR)<br><br>**AMENDED COMPLAINT**<br><br>**JURY DEMANDED** |

Plaintiff CMS Volkswagen Holdings, LLC d/b/a Palisades Volkswagen ("Palisades") and Hudson Valley Volkswagen, LLC ("Hudson Valley"), by their attorneys, Arent Fox LLP, as and for their Amended Complaint against Volkswagen Group of America, Inc. ("VW") allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs Palisades and Hudson Valley are Volkswagen dealers located in Nyack and Wappingers Falls, New York, respectively.

2. This action arises out of VW's violations of New York's Franchised Motor Vehicle Dealer Act, Veh. & Tr. L. §§ 460 *et. seq.* ("Dealer Act").

3. VW uses an unfair and unreasonable benchmark to measure Palisades' sales performance. Specifically, VW uses regional segment-adjusted market share to measure sales performance. In doing so, however, VW fails to take into account local market conditions beyond Palisades' control, including the fact that all of the European brands, including Volkswagen, underperform in Rockland County compared to the rest of metropolitan New York.

4. VW's use of this unfair and unreasonable benchmark to determine Palisades' sales objectives has caused injury in the form of lost sales and profits and the loss of franchise value.

Palisades is also thereby threatened with future harm, including the threat of termination for failing to meet VW's unfair and unreasonable sales performance standard.

5.  This action also arises out of VW's unreasonable conditioning of its consent to certain internal ownership changes in Palisades' and Hudson Valley's parent company, The Premier Collection, LLC ("Premier"), which were made primarily for estate and gift tax planning purposes. Specifically, VW has conditioned its consent to the ownership changes on the execution of various ancillary agreements including, without limitation, a corporate guaranty, a hold harmless agreement and covenant not to sue, and a subordination agreement that would substantially alter the rights and obligations of their franchises.

6.  New York's Dealer Act prohibits automobile manufacturers and distributors from using unfair and unreasonable sales performance standards with dealers. The Dealer Act also prohibits automobile manufacturers from placing unreasonable restrictions on a franchise relative to transfers or from preventing changes to the capital structure of a dealership.

7.  Accordingly, pursuant to the Dealer Act, Palisades seeks: (i) preliminary and permanent injunctive relief enjoining VW from using regional segmented market share as a benchmark for evaluating Palisades sales performance, without considering the unique Rockland County market conditions affecting Palisades; (ii) injunctive relief enjoining VW from placing unreasonable restrictions on Palisades' and Hudson Valley's internal transfers of ownership interests by conditioning its consent on unfair and unreasonable modifications of their franchises and (iii) attorneys' fees and costs as authorized by the Dealer Act.

## THE PARTIES

8. Plaintiff Palisades is a New York limited liability company, with its principal office in Rockland County, New York. Palisades and VW are parties to a franchise agreement for the sale and service of Volkswagen motor vehicles. Palisades is a "franchised motor vehicle dealer" as defined in section 462(7) of the Dealer Act.

9. Plaintiff Hudson Valley is a New York limited liability company, with its principal place of business in Dutchess County, New York. Hudson Valley and VW are parties to a franchise agreement for the sale and service of Volkswagen motor vehicles. Hudson Valley is a franchised motor vehicle dealer as defined in section 462(7) of the Dealer Act.

10. Defendant VW is a corporation organized and existing under the laws of the State of New Jersey with its principal office in the Commonwealth of Virginia. VW operates an unincorporated division under the assumed name Volkswagen of America, Inc. VW is a "franchisor" as defined in section 462(8) of the Dealer Act.

## NEW YORK'S FRANCHISED MOTOR VEHICLE DEALER ACT

11. The Dealer Act proscribes certain conduct on the part of automobile manufacturers and distributors (i.e. "franchisors") as unlawful and as unfair business practices. The prohibitions of the Dealer Act govern, "notwithstanding the terms of [the] franchise contract." Dealer Act § 463(2).

12. The Dealer Act forbids automobile franchisors from using "… [a]n unreasonable, arbitrary or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement." Dealer Act § 463(2)(gg).

13. The Dealer Act also prohibits manufacturers from "directly or indirectly [imposing] unreasonable restrictions on [a dealer] relative to transfer . . . and assertion of legal or equitable rights with respect to its franchise or dealership." Dealer Act § 466(1).

14. The Dealer Act also prohibits manufacturers from preventing or attempting to prevent a dealer from changing its capital structure. Dealer Act § 463(2)(j).

15. The Dealer Act creates a private right of action for injunctive relief and damages and provides for the award of attorney's fees:

> A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

Dealer Act § 469(a).

### THE USE OF REGIONAL MARKET SHARE TO DETERMINE PALISADES' COMPLIANCE WITH THE DEALER AGREEMENT'S SALES PERFORMANCE REQUIREMENTS VIOLATES THE DEALER ACT

16. VW calls its contractual measure of a dealer's sales performance the Dealer Sales Index, or "DSI." DSI is calculated by applying the Volkswagen brand's regional segment-adjusted market share to that dealer's assigned market area (known in VW's jargon as a Primary Area of Influence or "PAI"). In other words, to calculate a dealer's expected sales, VW determines the total number of all new vehicle registrations in a dealer's PAI and applies Volkswagen's segment-adjusted regional market share to that number.

17. To illustrate, if there are a total of 10,000 new vehicle registrations in a dealer's PAI and Volkswagen's regional market share is 5%, the dealer must sell 500 new Volkswagens to be considered sales effective and be in compliance with the franchise agreement. The actual

calculation is somewhat more complicated because only registrations of vehicles in segments (i.e. small sedans, large SUV's, etc.) in which Volkswagen competes are counted.

18. However, VW's strict regional market share benchmark fails to consider the unique consumer characteristics of Rockland County that impact Palisades' ability to meet VW's sales performance objectives. For example, VW unreasonably and arbitrarily fails to consider that all of the European car brands have lower market shares in Rockland County compared to Westchester County and downstate New York overall.

19. The Volkswagen brand's market share in Rockland County is only two-thirds of Volkswagen's market share in Westchester County and New York's nine downstate counties overall.

20. As reported in "Auto Outlook," the trade newsletter of the Greater New York Automobile Dealers Association, this phenomenon is consistent for all European brands in Rockland County compared to Westchester County and downstate New York overall!

|  | ROCKLAND | WESTCHESTER | 9 DOWNSTATE COUNTIES |
|---|---|---|---|
| Volkswagen | 2.2% | 3.2% | 3.3% |
| Audi | 1.7% | 3.0% | 2.0% |
| Mercedes-Benz | 4.5% | 6.5% | 5.8% |
| BMW | 3.9% | 6.0% | 4.6% |
| Porsche | 0.2% | 0.6% | N/A |
| MINI | 0.5% | 0.7% | N/A |

21. Like Volkswagen, the market shares of Audi, BMW, Mercedes-Benz, Porsche, and MINI in Rockland County are all significantly lower than their respective market shares in Westchester County and downstate New York overall. The fact that all of the European brands

underperform in Rockland County demonstrates that this underperformance is caused by local consumer preferences, and not dealer-specific operational factors.

22. VW's failure to consider that Rockland County's unique consumer preferences affects Palisades' ability to meet the sales performance requirements of the franchise agreement is unlawful, as it violates section 463(2)(gg) of the Dealer Act, which prohibits VW from using an unreasonable, arbitrary and unfair performance standard to evaluate a dealer's compliance with a franchise agreement.

23. Palisades' attempts to advise VW's representatives of these peculiar Rockland County market characteristics which adversely impact Palisades' ability to meet sales targets have gone unheeded. VW has never provided any rationale, or cogent explanation, for its failure to consider the market in which Palisades operates in evaluating Palisades' sales performance.

24. In or about June 2010, VW permitted the opening of a new Volkswagen dealership in Elmsford, New York, just eight miles away from Palisades. Elmsford is located in Westchester County where, in contrast to Rockland County, the market shares of the European brands meet or exceed their overall market shares in downstate New York.

25. Since the opening of the Elmsford dealership, Palisades' ability to sell into Westchester County, where Volkswagen sales exceed regional average, has been compromised. Before, Palisades was able to effectively sell into Westchester County and thereby exceed regional market share and attain a DSI that met the requirements of the franchise agreement. However, after, Palisades has been unable to attain a DSI that meets the requirements of the franchise agreement.

## VW PLACED UNLAWFUL RESTRICTIONS ON INTEREST TRANSFERS AMONG THE PLAINTIFFS' ULTIMATE OWNERS

26. In September 1999, VW entered into a Dealer Agreement with Hudson Valley, listing four (4) individuals as owners: Thomas Coughlin (70%); Richard Stavridis (10%); Sean Coughlin (10%); and John Matteson (10%).

27. In March 2001, VW entered into a Dealer Agreement with Palisades, listing the same four (4) individuals as owners in the same percentages.

28. Later in 2001, the individual members of Palisades and Hudson Valley contributed their membership interests to Premier, which they owned in the same percentages as they did for Palisades and Hudson Valley. In other words, the owners of Palisades and Hudson Valley simply dropped the dealership entities into a holding company. In addition to its Volkswagen franchises, Premier also owns Audi, BMW, Land Rover, Jaguar, Mazda and Volvo franchises.

29. On information and belief, VW was fully aware of this change to the ownership structure.

30. Over the next decade, Thomas Coughlin, the owner of 70% of the membership interests in Premier, began a series of transfers of beneficial interests in Premier to his family, primarily for estate and gift tax planning purposes. Over this period, Thomas transferred: (a) an additional 6% interest to his son Sean, giving Sean a 16% membership interest in Premier; (b) a 2.5% membership interest to his daughter Patricia; (c) a 16% membership interest to CIC LLC, an entity created for the purpose of making gifts to his children; and (d) a 3% membership interest to CICGR, LLC, an entity created for the purpose of making gifts to his grandchildren.

31. Accordingly, by the end of 2012, the membership interests in Premier, and by extension Hudson Valley and Palisades, were owned as follows:

AFDOCS/11390424.1         7

| | |
|---|---|
| Thomas Coughlin | 42.5% |
| Sean Coughlin | 16.0% |
| Richard Stavridis | 10.0% |
| John Matteson | 10.0% |
| Patricia Coughlin | 2.5% |
| CIC, LLC | 16.0% |
| CICGR, LLC | 3.0% |

32.     Because Thomas Coughlin controls CIC and CICGR, he effectively controls 61.5% of the membership interests in Premier.

33.     In December 2012 and January 2013, Palisades and Hudson Valley formally notified VW of the foregoing. VW requested, and Palisades and Hudson Valley supplied, additional documentation concerning the transfers and ownership structure of Premier.

34.     Thereafter, VW approved in principle the ownership structure; however, VW is also demanding that Palisades and Hudson Valley sign a new dealer agreement containing several side agreements that are patently unreasonable.

35.     Palisades and Hudson Valley do not object to certain of VW's reasonable requests that would result in VW being in the same position as if the individual members of Premier still owned Palisades and Hudson Valley directly. But the modifications that VW is demanding go well beyond that.

36.     Specifically, VW is demanding that Premier, Palisades and Hudson Valley sign corporate guarantees, hold harmless agreements and covenants not to sue, and dealer subordination agreements. VW is also requiring that Thomas Coughlin's children and

grandchildren be treated as direct owners of Premier, merely because of their beneficial interests in CIC and CICGR.

37. The unreasonableness of VW's demands is demonstrated by the fact that none of the other brands represented by Premier have imposed conditions similar to those sought by VW. Not BMW, not Land Rover, not Jaguar, not Mazda, not Volvo. Indeed, not even Audi, which, like the Volkswagen brand, is merely another operating unit of VW.

38. Simply put, VW is unlawfully using the occasion of normal family gifting and tax planning to rewrite Hudson Valley's and Palisades' franchise agreement and impose new and onerous obligations.

### FIRST CAUSE OF ACTION BY PALISADES FOR VIOLATION OF THE DEALER ACT
**(Declaratory Judgment and Injunctive Relief Concerning DSI)**

39. Palisades repeats and realleges the foregoing paragraphs as if set forth herein.

40. By calculating DSI, the measure of sales performance under the parties' franchise agreement, using a benchmark that fails to consider the unique aspects of the market in which Palisades operates, VW has violated section 463(2)(gg) of the Dealer Act by using an unreasonable and unfair sales performance standard in determining Palisades' compliance with its franchise agreement.

41. Section 469(a) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers, such as Palisades, to injunctive relief, without a showing of irreparable harm.

42. As a direct and proximate result of the foregoing, Palisades is, in any event, threatened with irreparable harm as it is in danger of falling out of compliance with the DSI requirements of its franchise agreement with Volkswagen Group.

43. Palisades has no adequate remedy at law.

44. By reason of the foregoing, Palisades is entitled to declaratory relief that VW's method of determining Palisades' DSI violates section 463(2)(gg) of the Dealer Act and permanent injunctive relief enjoining and restraining VW from using regional segment-adjusted market share as a sales performance benchmark to evaluate Palisades' compliance with the franchise agreement without considering the unique market characteristics in which Palisades operates in Rockland County.

### SECOND CAUSE OF ACTION BY PALISADES AND HUDSON VALLEY FOR VIOLATION OF THE DEALER ACT
**(Declaratory Judgment and Injunctive Relief Concerning Ownership Transfers)**

45. Palisades and Hudson Valley repeats and realleges the foregoing paragraphs as if set forth herein.

46. By reason of the foregoing, VW is imposing unreasonable restrictions on Palisades and Hudson Valley relative to the transfer of dealership interests and their assertion of legal and equitable rights in violation of section 466(1) of the Dealer Act.

47. By reason of the foregoing, VW is unlawfully preventing Palisades and Hudson Valley from changing their capital structure in violation of section 463(2)(j) of the Dealer Act.

48. Section 469(a) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers, such as Palisades and Hudson Valley, to injunctive relief, without a showing of irreparable harm.

49. Nevertheless, as a direct and proximate result of the foregoing, Palisades and Hudson Valley are threatened with irreparable harm as they are in danger of falling out of compliance with the terms of their franchise agreements with VW.

50. Palisades has no adequate remedy at law.

51. By reason of the foregoing, Palisades is entitled to a declaratory judgment that VW has violated sections 466(1) and 463(2)(j) of the Dealer Act and permanent injunctive relief requiring that VW consent to Palisades' and Hudson Valley's ownership changes without unreasonable conditions.

### THIRD CAUSE OF ACTION BY PALISADES AND HUDSON VALLEY FOR VIOLATION OF THE DEALER ACT
**(Attorney's Fees, Costs and Expenses)**

52. Palisades and Hudson Valley repeat and realleges the foregoing paragraphs as if set forth herein.

53. Section 469 of the Dealer Act establishes a private right of action for violations of the Dealer Act, and entitles aggrieved dealers to an award of reasonable attorney's fees, costs and disbursements.

54. By reason of the foregoing, Palisades and Hudson Valley are entitled to an award of reasonable attorney's fees, costs and disbursements incurred in connection with this action, in amounts to be determined at trial.

**WHEREFORE**, Palisades and Hudson Valley request judgment:

(i) on the First Cause of Action, for a declaratory judgment and permanent injunctive relief enjoining and restraining VW from using DSI or any measure of sales performance under Palisades' franchise agreement in a manner that is unreasonable, arbitrary or unfair, by failing to consider the unique market characteristics of Rockland County in evaluating Palisades compliance with the franchise agreement;

(ii) on the Second Cause of Action, for a declaratory judgment and permanent injunctive relief requiring that VW consent to Palisades' and Hudson

        Valley's ownership changes without unreasonable conditions or restrictions;

(iii)    on the Third Cause of Action, for an award in favor of Palisades and Hudson Valley against VW of their reasonable attorney's fees, costs and disbursements incurred in connection with this action, in amounts to be determined at trial; and

(iv)    for such other and further relief in favor of Palisades and Hudson Valley as this Court deems just and proper.

**Dated: New York, New York**
**October 16, 2014**

                            **ARENT FOX LLP**

                            By: <u>/s/ Russell P. McRory</u>
                                Russell P. McRory
                            **1675 Broadway**
                            **New York, New York 10019**
                            **212 484-3900**
                            **Attorneys for Plaintiffs**